IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 18, 2013 Session

## FRANK RAY BAGGETT v. ANNE MARIE BAGGETT

**Appeal from the Chancery Court for Hamilton County**
**Nos. 12-0260 & 12-0356      W. Frank Brown, III, Chancellor**

_____

**No. E2012-02013-COA-R3-CV-FILED-AUGUST 26, 2013**

_____

This is the divorce case of Frank Ray Baggett ("Husband") and Anne Marie Baggett ("Wife"). After eight years of marriage, Wife sued Husband for divorce. The following year, Husband sued Wife for wrongfully excluding him from A&F Computers, a computer sales and repair business. Husband sought his alleged share of the profits from the business, damages, and dissolution of the claimed partnership. By agreement, the two cases were consolidated for trial. The parties stipulated that grounds for divorce exist and the trial court decreed a divorce. Following the hearing, the court classified, valued, and divided the parties' property. The court determined that A&F was a sole proprietorship and awarded it to Wife. On appeal, Husband challenges the determination and disposition of A&F and the overall property division. He argues that the court's division is not equitable. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Grace E. Daniell, Chattanooga, Tennessee, for the appellant, Frank Ray Baggett.

Linda B. Hall, Soddy Daisy, Tennessee, and William A. Harris, III, Chattanooga, Tennessee, for the appellee, Anne Marie Baggett.

**OPINION**

I.

This appeal focuses on the trial court's division of the parties' property. In reaching its decision, the trial court was necessarily required to determine the classification and value of A&F and other assets including the parties' real property. Trial was held over two days in July and August of 2012. We summarize the relevant proof.

Husband and Wife met in 2000. They were then married to others. Husband, who was then recently retired from TVA , owned Intech, a computer sales and repair business. Wife, a high school graduate, owned a retail store. She met Husband when she purchased a computer from Intech for her store. Two years later, the parties met again. By then, Wife's marriage, her second, had ended, and she had closed her store. Husband was going through a divorce from his first wife, Connie. The parties began seeing each other and Wife spent much time with Husband at Intech learning about computers. In April 2002, Husband's divorce was finalized; in the settlement, his wife Connie was awarded Intech, but she did not continue the business. Husband and Wife decided to start a new computer sales and repair business. They opened  A&F, utilizing the first initial in each of their first names for the company's name. The new business was in  the location of the former home of Intech. As Wife explained, Husband "took the [Intech] name down and gave [Connie] the name, and A&F opened up." At trial, the parties agreed that it was Husband's idea to start A&F and to obtain the business license in Wife's name alone – Husband wanted to ensure that it was shielded from his ex-wife. He also sought to avoid any potential effect on his social security benefits.

A year later, in April 2003, Husband, then 61, and Wife, then 43, were married. Throughout the marriage, both parties worked full-time as computer technicians at A&F. In addition to those duties, Wife was the one who was primarily responsible for A&F's finances. The A&F income was reported under Wife's social security number. Most of A&F's  business came from computer repairs that on average were billed at $100 or less. In addition, the parties took trade-ins and purchased used computers from various sources, such as government auctions, to acquire parts for refurbishing computers. Husband focused on hardware issues and built refurbished computers, while Wife focused on software, formatting and reprogramming. Wife testified that "[w]e both did pretty much everything." Throughout the marriage, the parties shared the income they earned from A&F as well as approximately $2,200 a month that Husband received from his TVA retirement and social security.

In November 2004, Husband and Wife purchased property in Soddy Daisy for their marital home. Husband renovated a detached garage on the property as the new location for

A&F. At the time of the marriage, Husband owned a motor home. During the marriage, it caught on fire and was destroyed. In 2006, the parties purchased a replacement motor home, a Coachman, for $46,000. They applied the insurance proceeds from the fire toward the Coachman purchase. This left a balance due on the purchase of some $20,000, which was eventually incorporated into a home equity line of credit. In addition to the burned-out motor home, Husband brought a truck, and $42,000 in a 401(k) into the marriage. He testified that shortly after the marriage, he loaned $15,000 to Wife's sister, paid for a lengthy vacation for the parties, and invested the rest in A&F. Wife acknowledged that she owned no separate assets of any value at the time of the marriage.

The proof shows that the parties shared both the income from A&F as well as Husband's retirement income. During the marriage, Husband's income was set up for automatic drafts for the mortgage and utilities. The expenses for operating A&F – the "shop" and its associated utilities – were paid for as a part of home mortgage and utility bills for the marital home. Income from A&F was either deposited into a jointly owned business account or kept in cash in the parties' safe. The parties used the money to pay for purchases for themselves and the business. Husband took no direct salary from A&F, but acknowledged that he and Wife paid for food, clothing, and several lengthy vacations from income derived from A&F.

The parties' testimony regarding the receipts and profits of A&F varied widely. Wife testified to monthly receipts of $1,700 – $3,200, for an average income of approximately $2,200 a month. Husband testified to gross receipts, which he "conservatively" estimated at $200,000 a year. Husband estimated average daily gross receipts of $700, six days a week. Husband testified that "98%" of A&F's business was cash payments for computer repairs. He said that Wife placed the cash in the couple's safe, while the checks were deposited into their business account. Husband explained that he arrived at his estimated gross receipts of $200,000 based on his awareness of the payments, mainly in cash, that A&F took in. For her part, Wife disputed that A&F was almost exclusively a "cash-only" business, but agreed that she and Husband had always placed some of the cash they received directly into a safe to buy anything they wanted or needed. Husband said that at their separation, there was $9,000 in the safe. Wife testified there was $6,000, and that she gave half of it to Husband. On questioning by the court, Husband conceded that the parties had never filed a joint tax return reflecting $200,000 in gross receipts from A&F; he took the position that they had understated their income. Bank statements reflect that in the months before the parties' separation, the A&F account carried a balance of approximately $1,800 a month. Up until the time of trial, the new A&F account Wife opened showed monthly balances ranging from several hundred dollars to, at most, $29,000.

In February 2011, the marriage "hit the rocks." By Wife's account, the parties argued one day and Husband, for at least the "fifteenth time," said he wanted a divorce. Wife suggested he go to the beach and decide if that was what he really wanted. Husband could not recall any dispute that precipitated their separation. He denied that he had ever before asked for a divorce. He denied any marital problems except to say that he and Wife were not as physically close anymore. Husband testified to agreeing that they should take a break from each other and further agreed that he went to Florida for about a week in the motor home. It was undisputed that, when he returned, Wife refused to allow him to live in the marital home due to his continued shouting at her, making false accusations, and being irrational. On his return, Husband rented a space for the motor home and lived in it. Husband insisted that he repeatedly offered to return to work at A&F, but Wife threatened to "take out a warrant" and call the police if he did. Husband said he never returned home or to work because he didn't want to risk going to jail.

Wife testified that after Husband left, she deposited every payment of any type from A&F directly into the new A&F business account. From there, she transferred money to her personal account, or vice versa, as necessary to pay the bills and continue the business. Wife's 2011 individual tax return reflected that she was self-employed and earned a gross income of $27,107. On his 2011 tax return, Husband stated his occupation as "retired" and listed his "income" as that received from retirement and social security. The testimony indicated that the parties had filed joint tax returns during the marriage, but these returns were not put into evidence.

Wife testified that she felt insecure about Husband's behavior toward her when they first separated, but never tried to bar him from A&F. She said she did bar him from their home. For the first few months after they separated, according to Wife, Husband came to the business about once a week, but made no effort to do any work. In March 2011, Husband sent two emails to Wife regarding their bank accounts and other matters. On March 16, Husband wrote: "Annie, just to let you know I diverted my SSI and retirement checks to a new account . . . I will not touch either account anymore. You can remove me from both accounts. Also I will take no action in any other way about the house or business. The next action will be yours. Best of luck." On March 17, Husband wrote concerning their bank account: "Annie, you're welcome for the balances. As you are the primary owner you can add or remove anyone on the account. It doesn't matter to me either way."

In May 2011, Wife filed for divorce. The same month, she obtained a protective order against Husband that alleged he had threatened to break into the house and harm her. At her request, the restraining order was dismissed a few weeks later. Husband continued coming around the business, but had no involvement in its operation. In September 2011, Husband

voluntarily agreed to a second protective order that prohibited his presence on the property and ordered the parties to have no contact with each other.

In August 2011, Husband obtained a license for another computer business. With some financial assistance from his ex-wife, Husband opened another "Intech" the following month. The business was short-lived. Husband testified it was in an isolated location and had few customers. He closed Intech in December 2011, and reported an associated loss on his tax return of nearly $9,000. Around that time, the parties' divorce case had been set for a February 2012 trial. To that point, neither Husband nor Wife had referenced A&F in their pleadings in the divorce case. Thereafter, Wife filed a motion in limine regarding A&F, and Husband responded with a motion for exclusive possession of the marital home and pets. In another motion, he requested that the home be sold. In turn, Wife asked for an injunction to prevent Husband from competing with A&F. The court denied all of the requested relief.

On April 5, 2012, Husband filed the "partnership" action against Wife. He claimed that he and Wife were partners in A&F and that Wife had excluded him from the business for more than a year. Husband sought fifty percent of the profits earned during that time, an accounting and equitable division of the income and assets. He sought judicial dissolution of A&F. Wife answered as follows: "Wife admits that she and Husband formed a partnership which operated under the name of [A&F]. Wife admits that she and Husband jointly operated A&F until her separation from Husband in February of 2011" and that A&F was "operated at . . . jointly owned property, prior to its dissolution." Wife further admitted that "she operated a computer sales and repair business under the name [A&F] after the separation of the parties and after the dissolution of the partnership with Husband." Wife concluded that "[t]o the extent any semblance of partnership remains, Wife admits that dissolution is necessary and proper." Shortly before trial, an inventory of A&F was completed. Husband agreed to purchase A&F's inventory and equipment for $1,500. His offer, however, was conditioned on A&F and the marital home being awarded to him.

At trial, Husband testified that he always considered himself to be a co-owner of A&F. Wife's position was not entirely clear. She testified: "Actually the way it was, I didn't think we were partners at all. I mean we worked together, but the business wasn't listed as a partnership. I only know that it became a partnership after, so I don't quite know how to answer your question." At the time of trial, Husband was nearly 70 and Wife was 52. In the eighteen months since the separation, Wife had continued to operate A&F and pay all of the household/business expenses with the income from A&F. Wife remained in the marital home. Husband continued to live in the motor home, which he had since moved onto rent-free property owned by his ex-wife. Both parties requested that they be awarded the marital home and possession of their two dogs.

Following a bench trial of the consolidated cases, the trial court determined that A&F was not a partnership, but a sole proprietorship, and awarded it to Wife. Further, the court divided the marital estate. Husband filed a timely notice of appeal.

II.

Husband raises the following issues for our review:

> 1. Whether the trial court erred in finding that the business operated by the parties known as A&F Computers is not a partnership under the Revised Uniform Partnership Act.
>
> 2. Whether the trial court erred in failing to award Husband his interest in the partnership and damages for Wife's violation of the Revised Uniform Partnership Act.
>
> 3. Whether the trial court erred in failing to order the dissolution and winding up of the partnership.
>
> 4. Whether the trial court erred in the classification of A&F Computers as the separate property of Wife.
>
> 5. Whether the trial court erred in the valuation and division of the marital assets and liabilities of the parties.[1]

III.

Our review of the trial court's findings of fact is de novo upon the record of the proceedings below, accompanied by a presumption of correctness, a presumption we must honor unless the preponderance of the evidence is against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). There is no presumption of correctness as to the trial court's conclusions of law. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). We give great

---

[1] In the final paragraph of the "conclusion" section of her responsive brief, Wife asserts that Husband's appeal is "frivolous." Accordingly, she seeks an award of her attorney's fees and costs on appeal. Because Wife failed to raise this "issue" in the "issues presented" section of her brief, together with appropriate argument and citations to authority, we decline to consider her request. As an aside, we would note that we do not find Husband's appeal to be frivolous.

weight to a trial court's credibility determinations. ***Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

A trial court has broad discretion in fashioning a division of marital property. ***Fisher v. Fisher***, 648 S.W.2d 244, 246 (Tenn. 1983); ***Barnhill v. Barnhill***, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991). To this end, this Court has observed:

> Tenn. Code Ann. §36-4-121(c)[(2010)]outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and §36-4-121(a)(1) only requires an equitable division.
>
> \* \* \*
>
> This court will not disturb the trial court's division of the marital estate "unless the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements or procedures."

***Cradic v. Cradic***, E2012-00227-COA-R3-CV, 2013 WL 672576 at \*2 (Tenn. Ct. App. E.S., filed Feb. 22, 2013)(citing ***McHugh v. McHugh***, E2009-01391-COA-R3-CV, 2010 WL 1526140 at \*3-4 (Tenn. Ct. App. E.S., filed Apr. 16, 2010)(citations omitted)). *See also* ***Manis v. Manis***, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (appellate courts "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence").

## IV.

### A.

The thrust of Husband's argument is essentially two-fold: (1) the trial court erred in concluding that A&F is a sole proprietorship and (2) the overall property division is inequitable. We address these issues in turn.

### B.

Taken together, Husband's first several issues stem from his core position that A&F is a partnership and should have been treated as such under the Revised Uniform Partnership

Act, Tenn. Code Ann. § 61-1-101, *et seq*. (2002 & Supp. 2012). In particular, Husband asserts that the proof demonstrates that A&F is an implied partnership between the parties.

We quote pertinent portions of the trial court's findings regarding A&F:

> [Husband] and the soon-to-be [Wife] began a new computer business, know as [A&F], while [Husband] was in divorce proceedings with his first wife. . . . This new business was put in the soon-to-be [Wife's] name because [Husband] did not want the new company to be involved in his divorce case. Also, he did not want to report any income on his federal income tax return which might result in income tax consequences as a result of his receipt of Social Security Old Age benefits. [Husband and Wife] only filed one joint federal income tax return.

> * * *

> The parties . . . bought [the marital home] after their marriage. [Husband] did much of the work in converting a detached garage into the business location for A&F. It appears from the trial testimony that the . . . business licenses were listed in [Wife's] name. She testified that all income of A&F was reported under her Social Security number.

> The parties agreed that [Husband] could purchase the inventory and equipment of A&F for $1,500.00. [Husband] contends that the business produced income of $200,000.00 per year and had large accounts receivable. [Husband] valued the accounts receivable of A&F to be $200,000.00. At trial, he agreed that A&F probably had no accounts receivable as customers had to pay for goods bought or services rendered at the time of purchase or receipt of their repaired merchandise. However, [Husband] continued to assert that A&F had generated $200,000.00 in gross receipts for the last several years before the parties' separation.

The trial court determined the ownership and value of A&F as follows:

> A&F Computers is the separate property of [Wife]. The court concludes that [Husband and Wife] are not partners in A&F.

-8-

The only two tax returns submitted . . . were [Wife's] 2011 federal income tax return and [Husband's]. The returns show the computer business as her business. Trial Exhibit 17 is a loan application to Dupont Community Credit Union for the purchase of the 2007 Hyundai automobile. [Husband] is listed as retired and [Wife] is listed as the "owner of A&F Computer (self-employed)." Both parties signed . . . Exhibit 17. It is not treated as a partnership but as a proprietorship. [Husband] lists $8,795.00 in business income losses, which was due to his new[] Intech computer business, in late 2011. He listed the business[] as a sole proprietorship on his new Regions Bank Account.

\* \* \*

The court is going to assign A&F to [Wife] as her separate property. There are various components to the business. There is the value of the equipment and inventory. The parties have agreed that this value is $1,500.00. [Husband] is of the opinion that the business also has considerable accounts receivable. [Wife] says there are no such accounts receivable. At trial[,] [Husband] agreed that A&F had no accounts receivable. He still maintained that A&F generated $200,000.00 per year in gross revenue. The court agrees there are no accounts receivable. The court is also going to assign A&F's old business account at the DCCU to [Wife]. The value of that account is $61.05. Good will is not valued in a sole proprietorship. Evidently, both [parties] have a certain amount of "good will."

In support of its findings, the court expressly found that Husband's testimony with respect to A&F was not credible.

A partnership is "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit. . . ." Tenn. Code Ann. § 61-1-101(7)(Supp. 2012). The receipt of a share of the profits of that business is prima facie evidence that a partnership exists. Tenn. Code Ann. § 61-1-106(4)(2002). The Supreme Court has explained:

In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts,

actions, and conduct of the parties. If the parties' business brings them within the scope of a joint business undertaking for mutual profit–that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them-the result is a partnership whether or not the parties understood that it would be so.

*Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)(internal citations omitted). This court has further observed that "determining what constitutes a partnership is generally a matter of law, but whether a partnership exists under conflicting evidence is a question of fact." *In re Estate of Price*, 273 S.W.3d 113, 138 (Tenn. Ct. App. 2008). Absent a written partnership agreement, the burden is on the one asserting its existence to establish an implied partnership by clear and convincing evidence. *Id*. (citing *Tidwell v. Walden*, 205 Tenn. 705, 330 S.W.2d 317, 319 (1959); *Kuderewski v. Estate of Hobbs*, No. E2000-02515-COA-R3-CV, 2001 WL 862618 at *3 (Tenn. Ct. App. E.S., filed July 30, 2001)).

In the present case, the trial court expressly found that A&F was not a partnership. We respectfully disagree; however, our conclusion does not change the ultimate holdings of the trial court. We think this Court's decision in *Lyles v. Lyles*, C.A. No. 03A01-9412-GS-00434, 1995 WL 324033 at *2 (Tenn. Ct. App., E.S. filed May 31, 1995), is most instructive. Therein, the husband and wife were partners in a veterinary clinic pursuant to a written partnership agreement. In their divorce, the trial court classified and distributed the partnership as a part of it division of the marital estate. On appeal, the wife challenged the trial court's authority to "dissolve a partnership." In affirming the judgment, we observed:

> We are of the opinion, however, that the provisions of the Uniform Partnership Act have no application whatever to the case at hand. The pertinent statutory power of the court is to be found in T.C.A. § 36-4-121. This section of the code gives the court in which the action for divorce is pending, wide discretion in the division of marital property. "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final

-10-

divorce hearing date. T.C.A. § 36-4-121(b)(1)(A). There can be no genuine question but that partnership interests fall within the definition of "marital property."

The court possesses the power to effectuate its decree by divesting and reinvesting title to property, order the sale of property and order the sale of proceeds divided between the parties. There is no limitation on the type of property in question. We take the authority granted to the courts by this section (T.C.A. § 36-4-121(b)(1)(A)) to be all inclusive. Therefore, partnership interests, at least where the situs is within the State of Tennessee, may be marital property and treated as any other marital asset.

In the division of marital property, if a partnership is owned exclusively by the husband and wife, as is the case here, and is a part of the marital estate and is awarded wholly to one of the parties, its value is determined in accordance with T.C.A. § 36-4-121(b)(1)(A), and an accounting as contemplated by the Uniform Partnership Act would be a futile function. The law does not require futile acts.

We recognize that the present case is somewhat factually distinguishable in that Husband must first overcome the burden of proving the existence of a partnership in A&F. We think he has done this. The proof showed that while they were still dating, Husband taught Wife about computers and the computer business. Husband then suggested they open a new computer business together. They started A&F in the same location as Husband's former Intech business. They married and continued to work side-by-side at A&F, full-time, six days a week. According to Wife, both did "everything" at A&F. Although the business was listed in Wife's name on its license and other documents, such as a car loan application and tax returns, it is undisputed that both parties devoted their time, experience, and effort into its operation and shared in the profits. Husband took no salary for his efforts, but relied upon the money earned, as did Wife, to pay for food, clothing, and other purchases. He and Wife shared several vacations paid for by A&F monies. Although Wife held the view at trial that there was no partnership, *she expressly admitted to its existence in her answer to Husband's lawsuit*. She took the position that A&F was a partnership that was essentially dissolved when Husband never returned to work after the parties separated. At their separation, Wife took half of the cash in the parties' safe, money earned from A&F, and gave half of it to Husband. Again, "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business

-11-

relationship for profit, combining their property, labor, skill, experience, or money." ***Bass***, 814 S.W.2d at 41. In our view, the trial court's conclusion that A&F was not a partnership is incorrect. After the parties separated, Wife operated A&F on her own and kept all of the earnings. Husband's emails acknowledged and agreed to Wife's actions.

We thus conclude that Husband and Wife had a partnership in A&F. As in ***Lyles***, we further conclude, however, that domestic relations law, and not partnership law, is controlling in the context of the parties' divorce. To this end, it is our view that the trial court properly included A&F among the parties' assets, to be valued and distributed. As in ***Lyles***, application of partnership law and its provisions to this case would be redundant and "futile." We conclude that the Revised Uniform Partnership Act has no application to the case at bar.

C.

Husband asserts that the trial court further erred in awarding A&F to Wife as her "separate property." He submits that whether it is determined to be a partnership or a sole proprietorship, A&F is properly classified as marital property. Husband concludes that a consideration of the relevant factors weighs heavily in favor of Husband "receiving at least 50% of the marital assets" as set forth by him in his Asset and Liability Statement.

Tennessee's divorce statutes draw a distinction between "marital" and "separate" property. ***Batson v. Batson****,* 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988); Tenn. Code Ann. § 36-4-121 (2007). Consequently, "as a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably." ***Id***. In the case at bar, there is some question as to the trial court's treatment of A&F in the context of the property division. In its findings, the court expressly determined that "[A&F] is the separate property of [Wife]" and "assigned" it to her. Within its schedule of the property allocated to each party, however, the trial court included an entry for Wife – "Plus value of marital property (A&F)" – and added A&F's value to the other marital property awarded to Wife. Later in this opinion, we will further consider the trial court's treatment of A&F.

In all divorce cases, after classifying the parties' property, the trial court is directed to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). In making an equitable division of marital property, the trial court is guided by relevant factors to include:

(1) The duration of the marriage;

-12-

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. §36-1-121(c).

In the case at bar, the court set forth its property division as follows:

### WIFE

|  |  | Net Value |
|---|---|---|
| Marital home |  | $43,117.61 |
| 2007 Hyundai Accent |  | 7,379.00 |
| #512111 DCCU[2] |  | 506.19 |
| #488288 DCCU |  | 144.46 |
| #448287 DCCU |  | 61.05 |
| #511845 DCCU |  | 850.79 |
| Post-separation purchases |  | 1,721.00 |
| Cameras, lens |  | 500.00 |
| Computer & laptop |  | 600.00 |
| Household goods & furnishings |  | 2,000.00 |
|  | Marital Subtotal | $56,880.10 |
| Debt Assigned to Wife (Visa) |  | 1,448.24 |
|  | Net Marital | $55,431.86 |
| Plus Value of marital property (A&F) |  | 1,500.00 |
|  | Total | $56,931.86 |

### HUSBAND

|  |  |  |
|---|---|---|
| 2003 Coachman Motor home |  | $29,000.00 |
| 1991 Astrovan |  | 700.00 |
| DCCU #2146 |  | 2,000.00 |
| Items taken by Husband |  | 200.00 |
| Intech balance taken by Husband |  | 2,108.22 |
|  | Total | $34,008.22 |

In summary, as we see it, the trial court valued the marital estate at $90,940.08 ($56,931.86 + $34,008.22). Husband was awarded $34,008.22, or 37% of the estate, while Wife received $56,931.86, or 63%. In making its property division, the trial court stated, in part:

---

[2]The "DCCU" allocations represent the parties' various old and new, business and personal accounts at Dupont Community Credit Union.

At first blush, this appears to be an uneven allocation. Yet, the [motor home] obtained by [Husband] has been paid in full by payment of monies added on the home loan [Wife] will pay. This amount was around $10,000.00 or more. There is also the dissipation of marital assets by [Husband] of $8,795.00 on Intech in late 2011. He did not have collision on the Vespa scooter is his possession.[3] He testified the Vespa scooter [was] damaged by someone backing a car over it. Evidently, [Husband] did not make a claim to recover the value of the scooter. In . . . Exhibit 35, he valued the . . . scooter at $2,000.00. The value in . . . Exhibit 9 was zero.

* * *

The court has made the allocation for a number of reasons. First, [Wife] needs the home more than [Husband] needs the home. She needs a residence and a place to restart her new business. [Husband] has used the [motor home] as his home for 18 months. It may have gotten "old" by now but in March 2011 everything was fine. [Husband] had another business in another location before these parties married. He also had another business, in his name, during part of the parties' separation. Thus, he has operated two [computer] businesses at two different locations and the location of the home place is not as important to him as it is to her. This is the location of the only computer business she has owned or operated. She has been the sole worker, as between these parties, in the business since late February of 2011. She has made all of the house payments since March of 2011. She has a longer life expectancy than does [Husband] and the home is more valuable to her than him for the future.

* * *

[Husband] alleged that there was approximately $9,000.00 in a safe at the parties' home when they separated. [Wife] said there was $6,000.00 in cash and she gave him $3,000.00 when he left

---

[3]Husband testified he purchased the scooter during the marriage.

to go to Florida . . . and she kept $3,000.00. The court accepts [Wife's] version.

[Husband], when he retired from TVA . . ., irrevocably elected a retirement plan whereby, at his death, Connie Baggett would be paid a portion of his retirement if he predeceased her. Shortly after his marriage to [Wife], he also made her a similar beneficiary under his retirement plan. He valued this "asset" at $300.00 per month because that amount represents the reduction of his monthly retirement to cover such an election. This is somewhat speculative as no one knows if [Wife] will survive [Husband] or not.

\* \* \*

[Husband] has two sources of annual income: (1) Social Security . . . of $17,034.00, gross and $15,876.00 net after Medicare premiums and (2) TVA retirement of $11,064.26. He can start another computer business. [Wife's] monthly income was listed at $2,200.00 with total expenses of $1,996.00, leaving a net balance of $204.00. [Husband] is receiving Social Security benefits now and [Wife] is over nine years away. . . .

Finally, the court was more impressed with the credible testimony and evidence of [Wife]. [Husband] refused to answer questions at trial about what he did with personal loans he obtained. At times, he could not remember specific events. He was very detailed about claims on items [Wife] had but short on information about his own assets. He also stated high values on items he attributed to [Wife]. [Husband] did not produce records to verify his value or his positions. The court did not find his testimony about A&F to be credible.

As this Court has often explained,

The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property. In the final analysis, the justness of a particular division of the marital

-16-

> property and allocation of marital debt depends on its final
> results.

*Cradic*, 2013 WL 672576 at *3. In the present case, the trial court explained the reasons it achieved less than a "50/50" division of the marital property. We agree with the trial court that the division is equitable. Husband assesses the overall property division as an award of "$367,842.60 + dogs + $1,000 death benefit" to Wife, and $25,620 to Husband. On our considered review of the entire record, we conclude that the evidence offers no support for Husband's assessment. As the trial court found, Husband assigns many values in his proposed property division that are uncorroborated and appear to be inflated or clearly speculative. On appeal, for example, Husband assigns the entire appraised value of the marital home to Wife without accounting for the substantial remaining mortgage she must pay. Significantly, Husband includes in his calculations the $200,000.00 in "accounts receivable" *i.e.*, his term for "gross receipts," that he continues to maintain remain in A&F.

At this juncture, we briefly return to consider the classification of A&F. As should be readily evident, A&F, as a partnership between Husband and Wife, is properly classified as a marital asset. The proof showed its value to include $1,500 in equipment and inventory and the remaining balance of approximately $60 in the business account the parties jointly held before their separation. In our view, the trial court's award of A&F to Wife as her "separate property" was its way of recognizing that, for all intents and purposes, Wife alone owned and operated A&F following Husband's departure from the marriage. At the same time, the trial court clearly included the value of A&F as "marital property" in its allocation of marital assets to Wife. In the final analysis, while we find A&F to be a marital asset, the classification of this one asset does not render the overall division inequitable. Stated otherwise, if A&F is Wife's separate property, it was properly assigned to her alone. If it is deemed a marital asset, the attendant award of $1,500 to Wife does not render the overall property division inequitable. Either way, there is no evidence whatsoever to support Husband's assertion that the value of A&F should include hundreds of thousands of dollars in "accounts receivable" and/or gross income.

In the end, the trial court's decision essentially left Wife with a place to live and the ability to continue to support herself using the knowledge and experience she developed during the marriage. The trial court considered that Wife has no other assets, no separate income, is years from receiving social security, and has relied upon the computer business operated at the marital home as her sole source of income before, during, and since the separation. Husband was awarded the unencumbered "home" he has lived in since the parties separated. Considering his separate income, including social security, and his relatively low expenses, it appears that Husband has the option to remain "retired" or start another business. As to ownership of the parties' dogs, it is evident that the trial court

-17-

considered their needs and the ability of the parties to care for them. We find no error in this issue.

In summary, we have considered the trial court's overall property distribution in light of the various factors set forth in Tenn. Code Ann. § 36-4-121(c). On our review, we are unable to conclude that the property distribution was inequitable or that the trial court erred in its distribution of the marital property. The evidence simply does not preponderate against the trial court's division of the parties' property.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Frank Ray Baggett. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE