IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2021 Session

**TRACY MARIE HALTOM v. GREGORY WAYNE HALTOM**

**Appeal from the Chancery Court for Rutherford County**
**No. 17CV-1617      J. Mark Rogers, Judge**

———————————————

**No. M2019-02261-COA-R3-CV**

———————————————

The trial court granted a wife's complaint for divorce and divided the marital assets between the parties. The wife appealed, claiming that the trial court erred in classifying and dividing the marital assets. We affirm the trial court's classification and distribution of the marital property in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Stephen Walker Pate, Murfreesboro, Tennessee, for the appellant, Tracy Marie Haltom.

David Brock East, Murfreesboro, Tennessee, for the appellee, Gregory Wayne Haltom.

**OPINION**

I. PROCEDURAL AND FACTUAL BACKGROUND

Tracy Marie Haltom ("Wife") and Gregory Wayne Haltom ("Husband") were married for twelve years when Wife filed for divorce in September 2017. The parties had no children together, and neither party sought alimony or an award of attorney's fees. Although they stipulated to the division of certain assets, the parties were unable to agree about how to classify or divide other assets. They tried their case before the Chancery Court of Rutherford County on June 19 and July 9, 2019.

The evidence introduced at trial showed that both Wife and Husband had full-time jobs and were employed throughout their marriage. They began cohabitating approximately two years before the marriage and continued living together until the latter part of the marriage, with the exception of about seven months in 2010 when Husband

worked in Texas while Wife remained in Tennessee. At the time of trial, Wife was 52 years old. She was employed as a senior director of information technology at Acadia Healthcare and earned over $200,000 annually. Husband was 56 years old at the time of trial. He worked as a surgical first assistant and earned between $70,000 and $80,000 annually. The evidence did not include either party's educational background.

Wife purchased a house in Sumner County in 1999. Husband moved into Wife's house in 2003, and the parties were married in 2005. The parties shared a checking account for part of 2003 and 2004; thereafter, the parties had separate bank accounts. Wife made all of the mortgage payments on the Sumner County house. Husband never held an ownership interest in this house, but he testified that he contributed to its maintenance after the parties were married. According to Husband, he mowed the lawn, put in flower beds at the front and back of the house, planted trees, created a pond in the back yard, did some painting, and "did house cleaning, cooking, things of that nature." When Husband moved into Wife's house, Wife's two sons were living in the house, and Husband testified that he helped out with the children by taking them to school and picking them up after school.

The parties purchased twenty acres in Decatur County in 2013 for $60,000 and built a cabin to be used on weekends. Wife testified that she paid $12,000 from her own funds as a down payment and that the parties took a mortgage out in both of their names for the remainder of the purchase price. The deed to the Decatur property was put into the names of both parties. Wife testified that she and Husband built the cabin together but that she paid for the majority of the construction costs. She said that Husband paid $2,000, at most, for materials, and that he paid just one property tax bill. Husband testified that he made one or two mortgage payments for the cabin, but agreed that Wife made the remainder of the mortgage payments from her funds. The parties stipulated that the cabin's value at the time of trial was $100,000.

Wife sold the Sumner County house at the end of 2015 and realized $102,000 in equity from the sale. Wife testified that she used the full amount of that equity to make a down payment on another house located in Readyville, Tennessee, which the parties purchased in early 2016. The purchase price of the Readyville house was $420,000, and Wife put the title to that house into both her and Husband's names. The parties took out a mortgage that was also in both parties' names. Wife made all of the mortgage payments on the Readyville house and paid the majority of the utility bills. Husband testified that he did a lot of work in the yard and on the house. He purchased a tractor and mowed the lawn, which the parties agreed was very extensive.[1] Both parties paid for the household's groceries. The Readyville house was a log house, and Husband testified that he did the chinking, caulking, and painting on the house while he lived there. Wife testified that Husband's sole contribution to the utility bills at the Readyville house was $61.72.

---

[1]The Readyville house sat on a lot that included thirty acres. The parties did not specify how many acres constituted the lawn that Husband mowed.

In January 2017, the parties began sleeping in separate bedrooms. Husband moved out of the house in September 2017, and Wife filed her complaint for divorce on September 27, 2017. Wife stayed in the Readyville house until it was sold in May 2018. The parties' equity in the house was approximately $143,700. They used a portion of those funds to pay off the mortgage on the cabin, to pay off a loan Wife had taken out to pay for HVAC and duct work on the Readyville house, to pay property taxes attributable to the cabin, and to pay a debt the parties owed to the IRS dating from 2015. The parties placed the remaining $79,531 in Wife's attorney's trust account to be distributed by the trial court.

The parties each had retirement accounts that were initiated and grew during the marriage. Husband underwent two surgical procedures in the fall and winter of 2016, and he had to take six to eight weeks off of work for each procedure. He testified that he did not have any short-term disability insurance, so he took a $12,000 loan from his 401(k) in March 2017 to pay for living and medical expenses. Husband spent a few hundred dollars of this money on track lighting for the living room and kitchen of the Readyville house, and he intended to use a portion of the money to take Wife on a vacation to celebrate her fiftieth birthday. Wife refused Husband's offer to take her on a trip and, by the time of trial, the balance of the loan from Husband's 401(k) account totaled $7,218.74.

The parties entered into a number of stipulations before trial with regard to their personal property, vehicles, and bank accounts. The parties also agreed that an IRA account with Scottrade that Wife had before the marriage was Wife's separate property and that Wife would not claim an interest in a retirement account Husband began funding shortly before the trial. The issues before the trial court included (1) determining whether the $102,000 Wife realized from the sale of the Sumner County house constituted her separate property or marital property and (2) equitably dividing the cabin, the remaining proceeds from the sale of the Readyville house, the parties' individual investment and retirement accounts that were outside the parties' stipulations, and the outstanding balance of the loan Husband took from his 401(k) account.

In the final decree of divorce, the trial court granted Wife a divorce based on inappropriate marital conduct and, as the parties agreed, stated that the division of the marital estate would not be influenced by the reasons for the divorce. The court found that Wife voluntarily transmuted any separate property equity or assets associated with the purchase of the Readyville house that may have originated from the Sumner County property sale and that all proceeds from the sale of the Readyville house held in the trust account of Wife's attorney constituted marital assets, subject to equitable division. With regard to the cabin, the court found that it was purchased during the marriage using marital funds, it was titled in both parties' names, and therefore, the cabin was also subject to equitable division.

The trial court further stated that the parties' investment and retirement accounts that were created and grew during the parties' marriage (other than the retirement account

Husband began to fund shortly before the trial, which Wife agreed could go in its entirety to Husband) constituted marital property and were also subject to equitable division. After considering some of the factors set forth in Tenn. Code Ann. § 36-4-121(c), the court determined that the appropriate distribution was a "50-50 allocation" of the marital assets. The court concluded that the loan Husband took from his 401(k) was a joint debt and "should be factored into the 50-50 division of the [marital] assets." The parties disputed the date upon which the retirement and investment accounts should be valued for purposes of division, and the court resolved the issue by declaring that all accounts should be valued as of July 9, 2019, the final day of the trial, and that any money added after that date would be outside the marital estate.

Wife appeals, arguing that the trial court erred in (1) ruling that transmutation occurred with regard to her interest in the Sumner County property and (2) equally dividing the marital assets.

II. ANALYSIS

A. Standard of Review

We review a trial court's findings of fact de novo upon the record, affording the court's findings a presumption of correctness unless the evidence preponderates otherwise. TENN. R. CIV. P. 13(d); *Baggett v. Baggett*, 422 S.W.3d 537, 542 (Tenn. Ct. App. 2013). We review questions of law de novo, giving no presumption of correctness to the trial court's conclusions of law. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007); *Baggett*, 422 S.W.3d at 542.

B. Classification of Property as Marital or Separate

Tennessee is a "dual property" state because it recognizes both marital property and separate property. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009); *see* Tenn. Code Ann. § 36-4-121. "Marital property" is defined, in relevant part, as follows:

(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .

(B)(i) "Marital property" includes income from, and any increase in the value during the marriage of, property determined to be separate property in

- 4 -

accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation;

> (ii) "Marital property" includes the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefit rights accrued as a result of employment during the marriage;

> . . . .

> (D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine[.]

Tenn. Code Ann. § 36-4-121(b)(1). The statute defines "separate property," in pertinent part, thusly:

> (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;

> (B) Property acquired in exchange for property acquired before the marriage;

> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); [and]

> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent[.]

Tenn. Code Ann. § 36-4-121(b)(2) (footnote omitted). A party's separate property is not a part of the marital estate subject to division. *Snodgrass*, 295 S.W.3d at 246. "Decisions pertaining to the classification of property as either separate or marital are intrinsically factual." *Treadwell v. Lamb*, No. M2015-01391-COA-R3-CV, 2017 WL 945940, at *6 (Tenn. Ct. App. Jan. 19, 2017) (citing *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007)). A trial court's classification of property as separate or marital, therefore, will be affirmed unless the evidence preponderates otherwise. *Id.*

Wife asserts that the $102,000 she received as equity from the sale of her Sumner County house should have been classified by the trial court as her separate property because she purchased that house before marrying Husband and the court did not specifically find

that Husband's contributions during the marriage converted the house from separate to marital property. The trial court made the following findings with regard to the Sumner County house:

> 20. It is not contested that Wife purchased real property prior to the marriage in [Sumner County], Tennessee. She purchased the property in January of 1999. The parties cohabitated in said residence beginning in approximately 2003 and continuing after their marriage in 2005. The residence was sold on December 28, 2015. During this period of time in the [Sumner County] property, there was some period of time where the parties paid its associated bills though a bank account that was in Wife's name but was jointly used as husband deposited his paychecks into the account and had spending privileges on same. At the trial, there was no proof offered as to the value of the [Sumner County] home when they married in 2005.
>
> 21. Shortly after said sale of the [Sumner County] property, the parties purchased the Readyville property referenced herein. The title to said Readyville property was put into both parties' names. The Court finds that Wife voluntarily transmuted any separate property equity or assets that were associated with the purchase of the Readyville home that may have originated from the [Sumner County] property sale and therefore all proceeds from the sale of the Readyville home that are held in the trust account of Wife's counsel are marital and subject to division.

In finding that transmutation had occurred, the trial court relied on the case *Eldridge v. Eldridge*, 137 S.W.3d 1 (Tenn. Ct. App. 2002). The court in that case wrote that the doctrines of transmutation and commingling provide an avenue whereby "separate property can become part of the marital estate due to the parties' treatment of the separate property." *Eldridge*, 137 S.W.3d at 13. The *Eldridge* court adopted the following principles:

> "[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate."

*Id.* at 13-14 (quoting *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1989)); *see also Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). The four most common factors courts consider to determine whether transmutation of real estate has occurred are the following:

> "(1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property."

*Luplow v. Luplow*, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014) (quoting *Fox v. Fox,* No. M2004-01616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006)).

The facts of *Eldridge* are similar to those here and its holding is instructive. The husband in *Eldridge* received $2 million as a gift from his mother and used $1.2 million of this gift to purchase a house that cost $1.675 million. *Eldridge*, 137 S.W.3d at 14. The husband took out a mortgage in his own name for the balance and arranged for the house to be jointly titled in both his and his wife's names. *Id.* The parties never moved into the $1.675 million house, as they intended to do, and they did not spend much time there. *Id.* The trial court determined that the $1.2 million that the husband received from his mother and used to purchase the house was his separate property and that the remaining $474,000 of the house's fair market value was marital property. *Id.* The wife in *Eldridge* appealed this ruling, and we reversed the trial court, writing:

> When Husband's mother gave him a gift of 2 million dollars, the gift was Husband's separate property. When Husband applied 1.2 million dollars of this gift toward the purchase of the Greenbay house and titled it in the names of both spouses, however, Husband created a rebuttable presumption of a gift to the marital estate. From our review of the record, Husband failed to rebut this presumption. We can find no evidence in the record that clearly indicates Husband's intent to keep the 1.2 million dollars as separate property. Husband did not state that he intended to keep the property separate in his testimony. Instead, Husband stated that "[w]e purchased [the house] in February, 1997." This statement indicates that Husband considered both himself and Wife as copurchasers of the home. Husband relies heavily on circumstances to defeat the presumption including the fact that the parties did not move to the residence, that they did not spend much time at the residence, and that they did not improve the residence. Husband further notes that Wife's marital misconduct caused the parties to terminate their move. These circumstances do not illustrate that Husband intended to keep the 1.2 million dollars as his separate property and will not defeat the presumption in this case.

*Id.* at 15 (footnote omitted); *see also Gleaves v. Gleaves*, No. M2007-01820-COA-R3-CV, 2008 WL 4922533, at *5-6 (Tenn. Ct. App. Nov. 13, 2008); *Miller v. Miller,* No. W2003-00851-COA-R3-CV, 2004 WL 1334516, at *3-4 (Tenn. Ct. App. June 14, 2004).

Wife argues that the $102,000 in equity from the Sumner County house that she used as a down payment on the Readyville house should have been classified as her separate property because Husband had no ownership interest in the Sumner County house and she made all the mortgage payments for that house. She contends that the trial court erred by finding that she transmuted ownership of the Sumner County house. Wife mischaracterizes the trial court's findings. The trial court found that Wife "voluntarily transmuted any separate property equity or assets that *were associated with the purchase of the Readyville home that may have originated from the [Sumner County] property sale* and therefore all proceeds from the sale of the Readyville home that are held in the trust account of Wife's counsel are marital and subject to division." (Emphasis added.) The trial court did not classify the Sumner County house as a separate or marital asset because neither party owned it at the time of trial. When Wife used the equity from the sale of the Sumner County house to purchase the Readyville house, the trial court concluded that she transmuted those funds into marital property, in part, because both parties were listed as owners of the Readyville house. As the trial court noted, there was no evidence of either the value of the Sumner County house when Husband moved in or whether the value increased during the twelve or so years that Husband lived in the house with Wife. In addition, Wife introduced no proof showing that she intended to maintain the $102,000 in equity as her separate property. *See Eldridge*, 137 S.W.3d at 14 (stating presumption that property acquired during marriage is marital can be rebutted by evidence indicating intent that property remain separate). In fact, the evidence shows just the opposite because the parties agreed to use a portion of the equity from the sale of the Readyville property to pay off the mortgage on the cabin, which Wife agrees was properly classified as marital property. We also note Wife's testimony that she included Husband's name on the title of the Readyville house in an effort "to resolve a marital issue." Wife explained that she was going to put the Readyville house in her name alone but she decided to include Husband as an owner for the following reason:

> [T]here has always been a point of contention with him about the [Sumner County] house, "This is your house. This is your house." And I was like, fine, I'm going to go out of my way. I'm going to put my all into this, and I put his name on there. I didn't need to. I could have put it in just my name. I did the right thing to make a marriage work, and it didn't work.

Wife's testimony indicates that she intentionally took steps to make the Readyville house marital property. In addition, as noted above, the evidence showed that Husband contributed to the maintenance of the Readyville house and was in charge of the extensive outdoor area of the property.

Wife relies on the *Treadwell v. Lamb* case to support her argument that the trial court erred in classifying the $102,000 equity in the Sumner County house as marital property as a result of transmutation. In *Treadwell*, the husband acquired three parcels of property prior to the parties' marriage. *Treadwell*, 2017 WL 945940, at *7-9. The husband paid the mortgage off on the first property at issue before the parties were married, and the title to this property remained in the husband's name. *Id.* at *7. The parties used this property as their marital residence, but "little evidence" was introduced showing whether the wife took any steps to preserve or increase the value of the property. *Id.* As with the first parcel, the husband paid off the mortgage on the second parcel before the parties were married, and this property was also in only the husband's name. *Id.* at *8. The parties never lived on this parcel; it was used as rental property that the parties managed. *Id.* The wife claimed that she contributed to the property's equity by managing it, cleaning and repainting it after tenants moved out, and digging a ditch. *Id.* No evidence was introduced indicating whether this second parcel increased in value during the time the parties were married. *Id.* at *9. The third parcel was also rental property that the parties managed, but the husband paid off the mortgage for this property during the first six years of the parties' marriage. *Id.* The trial court classified the first two parcels as the husband's separate property, but it classified the third parcel as marital property, in part because marital funds were used to pay the mortgage on it. *Id.* We affirmed the trial court's classification on appeal. *Id.* at *9, *12. As with the property that was classified as marital in *Treadwell*, marital funds were used to make mortgage payments on the Sumner County house. Moreover, the facts here make a stronger case for finding the $102,000 was transmuted into marital property because Wife used those funds to purchase a house during the marriage that both she and Husband owned and lived in together.

The second case Wife relies on to support her position is *Hunt-Carden v. Carden*, No. E2018-00175-COA-R3-CV, 2020 WL 1026263 (Tenn. Ct. App. Mar. 3, 2020). In that case, the husband purchased the parties' marital home shortly before the parties were married, using proceeds from funds he had obtained from an insurance settlement, and he had the house put in his name alone. *Carden*, 2020 WL 1026263, at *6. The parties shared a bank account, and the mortgage was paid from that account. *Id.* The evidence showed that the wife maintained and managed the house and that she contributed to the joint account the amounts she received in child support from a prior relationship and money her parents gave her. *Id.* Even though the title to the house was in the husband's name alone, we affirmed the trial court's ruling that the house was marital property based on the doctrine of transmutation. *Id.* We also determined, however, that the husband should receive the amount of his down payment on the marital home as his separate property, and the wife was awarded one-half of the remaining equity in the home upon the sale of the house. *Id.* at *8, *12.

The award to the husband in *Carden* of his down payment on the marital home does not determine the outcome here. Unlike *Carden*, which involved a marriage of short duration, *Carden*, 2020 WL 1026263, at *1, this case involves parties who were married

for fourteen years, and, other than the seven months in 2010 when Husband worked in Texas, they lived together in the Sumner County house for twelve years. The $102,000 at issue did not originate from an isolated gift, as in *Carden*, but from an asset to which the evidence showed Husband contributed for twelve years. For these and the other reasons identified above, including the factors courts often consider in determining whether transmutation has occurred, we find the evidence introduced at trial does not preponderate against the trial court's classification of the $102,000 in equity as marital property based on the doctrine of transmutation. Accordingly, we affirm the trial court's classification of these funds.

C. Division of Marital Property

Wife contends the trial court erred by dividing the marital estate equally between the parties. The marital assets the trial court was tasked to divide equitably included the following: $79,531 in proceeds from the sale of the Readyville house, the cabin, which the parties agreed had a value of $100,000, a 401(k) account in Husband's name, a 401(k) account in Wife's name, and two investment accounts in Wife's name. The only marital debt was the $7,218.74 outstanding from the loan Husband took from his 401(k) in 2017.

Courts in Tennessee are directed to divide the marital assets "equitably" between the parties, "without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). "A trial court has broad discretion in fashioning a division of marital property." *Baggett*, 422 S.W.3d at 543 (citing *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Barnhill v. Barnhill,* 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991)). As a result, "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt*, 244 S.W.3d at 327 (quoting *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

Courts are directed to consider the following factors when equitably dividing marital property:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage

- 10 -

earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c). "An equitable property division 'is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.'" *Watson v. Watson*, No. E2005-00369-COA-R3-CV, 2005 WL 3533293, at *3 (Tenn. Ct. App. Dec. 27, 2005) (quoting *Batson*, 769 S.W.2d at 859).

Following the close of evidence, the trial court issued an oral ruling stating that an equal division of the assets between the parties was the most equitable distribution. The oral ruling was later attached to and made a part of the court's final order. After noting the parties' ages, the length of the marriage (fourteen years), and describing the marital assets subject to division, the trial court stated the following, in relevant part:

It appears from the evidence at trial that both parties have moved on with their personal lives, social and/or otherwise.

Only the parties testified. Both are found by this Court to be bright, intelligent, and hard workers. Although no testimony was offered with regard to each party's educational background, the Court finds and notes that

Wife is employed as a "senior director" [of] IT with Acadia Healthcare, holding the same employment position since April of 2011, where she remains employed.

Husband has been employed as a surgical first assistant, what appears to be a demanding, skilled position in the medical field, assisting surgeons involved in heart procedures, so employed since 2003, other than for brief periods during which he had surgery for a neck problem, and then had a shoulder problem, when he was out of work for a period of time . . . .

. . . .

This Court listened carefully, and although there was some indication Wife complained there was some drinking to excess on Husband's part, I have before me two people that have got demanding careers, hard-working employment positions, both of whom have worked throughout their marriage together, that [are] very vigorous, demanding employment positions . . . .

The evidence does not indicate, other than the allegation of the drinking, which, certainly, could interfere with a marriage - - nothing to indicate someone, that is specifically Husband, did not go to work. In fact, the proof shows otherwise.

Having no dissipation of assets, this Court finds there would be nothing to indicate that [Husband] was dissipating assets, that [Wife] was dissipating assets, but, rather, both making good money - - [Wife] making in excess of over $200,000, Husband making in excess of 70 to 80 thousand, which is certainly not a small income, that this Court finds the appropriate distribution is a 50-50 allocation of the assets of these parties, and that's what the order of this Court will be.

That would also give, on the 401(k) that's in Husband's name, which there's a $7,000 loan balance remaining, and I understand $200 or $300 of that was to go into the residence that was purchased, the Readyville property, and I believe the testimony was the remainder went to medical expenses, which would have been a joint expense of the parties, that those sums should be in - - that that account should stay with Husband, leave as much as you can with Wife in the same situation, but that account should stay with Husband, with the equity of a credit for the debt that's owed to be 50-50.

Wife contends the trial court did not adequately consider the factors set forth in Tenn. Code Ann. § 36-4-121(c) when it determined that the marital assets and debt should be equally divided. Upon reviewing the trial court's oral and written decision, we find that

- 12 -

the court considered the relevant factors for which the parties introduced proof. Other than Wife's Scottrade IRA, which the parties agreed was Wife's separate property and was valued at $102,272, the parties did not introduce evidence of the value of their vehicles or personal property that they divided outside of court. They also did not introduce evidence of the value of their estates when they were married in 2005. We find that the trial court considered the other relevant factors set forth in Tenn. Code Ann. § 36-4-121(c).

Wife argues that she was entitled to a larger share of the marital estate based on her contribution toward the acquisition and maintenance of the Readyville house and cabin and the fact that she made the majority of the mortgage payments on these properties. The evidence showed that Husband contributed to the maintenance and upkeep of the Readyville house and that he contributed to the building of the cabin. As we stated in *Smith v. Smith*, No. M2003-02242-COA-R3-CV, 2004 WL 2094508, at *3 (Tenn. Ct. App. Sept. 20, 2004), "the task before the court [when distributing marital assets] is to make an equitable division of the marital property, not to repay either spouse exactly for amounts they may have contributed." *See also Watson*, 2005 WL 3533293, at *4 ("*Equitable* division of marital property does not necessarily equate to the strict repayment of each parties' contribution."). Wife failed to show that the trial court abused its discretion in equally dividing the marital assets and debt between the parties.

Wife's final argument is that the investment and 401(k) accounts should be valued as of January 2017, when she moved out of the marital bedroom, rather than as of July 9, 2019, when the trial court granted her a divorce and divided the assets. The statute clearly states that marital assets are to be "valued as of a date as near as reasonably possible to the final divorce hearing date." Tenn. Code Ann. § 36-4-121(b)(1)(A). Thus, we affirm the trial court's ruling on this issue.

### III. CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal shall be assessed against the appellant, Tracy Marie Haltom, for which execution may issue if necessary.

_/s/Andy D. Bennett_____
ANDY D. BENNETT, JUDGE