IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 18, 2014 Session

## ROMELIO R. RUIZ v. SHEILA LEA RUIZ

**Appeal from the Circuit Court for Hamilton County**
**No. 11D258     W. Neil Thomas, III, Judge**

**No. E2013-02142-COA-R3-CV-FILED-OCTOBER 27, 2014**

In this divorce case, the appellant Sheila Lea Ruiz (Wife) argues (1) that the trial court erred in its calculation of the net marital estate, and (2) that the award of alimony to her should have been in futuro rather than for a fixed five-year period.  We hold that, although the trial court unintentionally charged Husband twice with an indebtedness arising out of a loan he took out against his 401(k) retirement account, the overall division of the net marital estate is equitable when the true total value of the net marital estate is considered.  Regarding alimony, we hold that, considering the relevant statutory factors, particularly the some 30-year duration of the marriage, the state of Wife's health, the huge disparity in the parties' earning capacities, Wife's need for support, and Romelio R. Ruiz's (Husband) ability to pay, the alimony award should be modified to make it an award in futuro.  Accordingly, we modify the alimony award by changing it from $1,300 per month for five years to $1,000 per month in futuro until Wife dies or remarries.  We remand this case to the trial court for a determination of Wife's reasonable attorney's fees at trial and on appeal, said awards to be in the nature of alimony in solido.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Angela C. Larkins, Chattanooga, Tennessee, for the appellant, Sheila Lea Ruiz.

Grace E. Daniell, Chattanooga, Tennessee, for the appellee, Romelio R. Ruiz.

**OPINION**

I.

The parties were married on October 10, 1981, a few months after Wife turned 18 and graduated from high school. Husband was then on active duty in the United States Navy. Husband served in the Navy for the first eight years of the marriage, during which time three sons were born to the parties. The children reached adulthood before the parties separated. Husband was trained in the Navy to work on boilers, and he continued this work as a contractor after his naval service. At the time of trial, Husband had been employed for 18 years by Industrial Boiler & Mechanical in Hamilton County. Husband's income in 2012 was approximately $130,000. Over the course of the marriage, Wife worked outside the home on a full-time basis only once – in 1992 or 1993 – as a travel agent. She was employed for approximately six months. Wife had several part-time jobs during the marriage, none of which lasted very long.

The parties separated in June or July of 2010. Husband filed for divorce on February 2, 2011. The first day of trial was held on July 5, 2012. The trial did not resume again until February 22, 2013.[1] The parties agreed at trial that all of their assets and liabilities were marital in nature. Neither of the parties had any separate property. With the values found by the trial court in parenthesis, the court divided the marital estate as follows: to Wife, the marital residence ($115,000), household furnishings in her possession ($10,000), and a 2006 Chevrolet Trailblazer ($12,000); to Husband, his 401(k) retirement account ($131,226), household furnishings in his possession ($1,060), and the cash value of his life insurance policy ($14,172). All of the marital debt, which the trial court found to total $42,886, was assigned to Husband. Additionally, the trial court ordered Husband to pay Wife $5,000 "so that Wife can clean up the marital residence." According to the trial court's calculations, Wife's share of the marital estate totaled $142,000. Husband's share of the estate, taking into account the $5,000 due Wife, totaled $141,458. Reduced by the parties' debt of $42,886, Husband received a net of $98,572. Again, all of this was based upon the trial court's valuations and calculations.

The trial court ordered Husband to pay alimony of $1,300 per month for a period of five years. In calculating alimony, the trial court imputed income to Wife in the amount of $16,000 per year. Wife timely filed a notice of appeal.

II.

Wife raises the following issues, as quoted from her brief:

---

[1]It goes without saying that dockets in metropolitan areas are quite heavy.

-2-

1. Did the trial court err in its award of alimony to the Wife as to the duration, nature and amount?

2. Did the Court err in calculating the Husband's income?

3. Did the trial court err in its valuation of the Husband's 401(k) account?

4. Did the trial court err in the valuation of the marital debts?

5. Did the trial court err in its division of the marital estate and the marital residence?

6. Did the trial court err in not awarding any attorney fees to [Wife] as alimony in solido?

III.

Our review of the trial court's findings of fact is de novo upon the record of the proceedings below, accompanied by a presumption of correctness, a presumption we must honor unless the preponderance of the evidence is against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's findings regarding division of marital property, including its classification and valuation, are findings of fact. *Beyer v. Beyer*, 428 S.W.3d 59, 80 (Tenn. Ct. App. 2013) (quoting *Rountree v. Rountree*, 369 S.W.3d 122, 133 (Tenn. Ct. App. 2012)). There is no presumption of correctness as to the trial court's conclusions of law. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). We give great weight to a trial court's credibility determinations. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

As we recently stated in *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013),

> A trial court has broad discretion in fashioning a division of marital property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991). To this end, this Court has observed:

Tenn. Code Ann. § 36-4-121(c)[(2010)] outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an equitable division.

\* \* \*

This court will not disturb the trial court's division of the marital estate "unless the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements or procedures."

*Cradic v. Cradic*, E2012–00227–COA–R3–CV, 2013 WL 672576 at \*2 (Tenn. Ct. App. E.S., filed Feb. 22, 2013)(citing *McHugh v. McHugh*, E2009–01391–COA–R3–CV, 2010 WL 1526140 at \*3-4 (Tenn. Ct. App. E.S., filed Apr. 16, 2010) (citations omitted)). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (appellate courts "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence").

IV.

A.

The governing statute provides the following factors a trial court must consider when dividing the net marital estate:

In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

-4-

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2014).

We review the evidence presented at trial with the above factors in mind. The marriage was one of long duration – over 30 years. Wife was 49 years old at the time of the divorce; Husband was 54. Each graduated from high school. Husband received training and work experience on boilers in the Navy and has been steadily employed in that field ever since. Husband earned approximately $130,000 in 2012. Apparently, Husband is generally in good health, since he presented no evidence or argument to the contrary.

As already noted, Wife had only been employed outside the home on a full-time basis for a brief period of time – about six months in 1992 or 1993. Wife worked several part-time jobs over the course of the marriage on a somewhat sporadic and short-term basis.

The parties presented conflicting evidence on Wife's contributions to the marriage as a homemaker and parent. It is undisputed that Husband's employment required him to travel away from home frequently, both during and after his years of active duty military service. Wife was thus the primary caretaker for the parties' three children. Wife was also generally in charge of the parties' finances. Both parties testified that the bills were sometimes not paid on time.

Husband stated that Wife did almost no housework, and that it fell to him to clean the house and do laundry. According to Husband, Wife would occasionally but infrequently cook meals for the family. Wife stated that she was "not naturally an organized person and housecleaning is not a priority." Husband testified that Wife developed a drinking problem early in the marriage and would often be intoxicated when he got home from work. One of the parties' sons, Joel Ruiz, similarly testified that the children often had to take care of cleaning, laundry, and cooking for themselves, and recalled that Wife was sometimes intoxicated and incapacitated at home. When Wife was asked whether she was "a recovering alcoholic," she answered, "I've got 14 years sober, yes."

Wife testified that she suffers from back pain and has been on various prescription pain medications since 1998. Husband testified that Wife became addicted to pain pills during the marriage, took them every day, and was impaired around sixty percent of the time. The condition of the house was a source of conflict in the marriage. Husband was unhappy with its perpetually messy and cluttered condition. He stated that Wife allowed the family pets to have free rein in the house. Husband presented pictures of the marital residence, taken by son Joel after the separation, which showed its poor condition. Regarding the house, Joel testified,

> as you can see in there, there's dishes piled up. There's excrement and dog urine everywhere that should be cleaned up because that's not healthy to live in. There's trash everywhere.

At the time of trial, Wife had six dogs and a cat. When she was asked "why do you leave dog feces all over the floor?," Wife stated, "I have given up. Because of the depression I have given up caring about almost everything for quite a while." Wife was arrested for shoplifting three times during the marriage.

The parties disagreed and presented conflicting proof about Wife's physical health and her capacity for employment. Wife argued that her frequent back pain keeps her from working more than short periods. Wife had fusion surgery on her back in 2009, breast reduction surgery in 2004, foot surgery in 2010, and carpal tunnel surgery in 1990 and again sometime after 2010. Wife contends that the pain precludes her from sitting or standing very

long, and that her physical limitations, in tandem with her need to be on narcotic pain medications, make it hard to find employment. She admitted that her efforts to find a job since the separation were relatively minimal.

Husband agreed that Wife suffers some back pain, but argues that she was physically able to work. Husband presented the testimony of two experts – Dr. Keri Redfern, a physical therapist, and Dr. William A. Wray, a clinical psychologist and professional disability consultant. Dr. Redfern conducted a functional capacity evaluation of Wife and concluded that Wife was "able to have tolerance of an 8-hour day 40-hour workweek" performing light duty work. Dr. Wray did a "vocational access evaluation trying to determine to what extent [Wife's] medical problems and limitations restricted her from access to employment in the local economy." Dr. Wray testified that at the time he evaluated Wife, her prescriptions included hydrocodone, Robaxin, Cymbalta, Inderal, Valtrex, and Melatonin. Dr. Wray concluded that Wife "has access to . . . skilled, semi-skilled, and to a pretty good range of unskilled jobs" and that she "is capable of handling medium physical demand employment . . . [e]ight hours a day, full-time." Husband also presented the testimony of Kirk Lewis, Wife's neighbor who lives across the street. Lewis testified that he had seen Wife working outside mowing the lawn, on a ladder painting the house, and tearing down a concrete retaining wall with a six-pound sledgehammer.

Wife argues that the trial court should have found that Husband dissipated marital assets during the pendency of the divorce. Wife did not specifically ask the trial court for a dissipation finding, nor did she assert her dissipation claim prior to filing her post-trial motion to alter or amend. The trial court did not find that Husband had dissipated marital assets. In *Beyer*, we recently stated the following regarding a claim of dissipation of marital assets:

> When equitably dividing the marital estate, the trial court should consider whether one party dissipated marital assets. *See* Tenn. Code Ann. § 36-4-121(c)(5). The "dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed." Tenn. Code Ann. § 36-4-121(c)(5)(B). Moreover, as our Tennessee Supreme Court explained in *Larsen-Ball v. Ball*, 301 S.W.3d 228[, 235] (Tenn. 2010):
>
>> Whether dissipation has occurred depends on the facts of the particular case. 24 Am. Jur. 2d

Divorce and Separation § 526 (2009). The party alleging dissipation carries the initial burden of production and the burden of persuasion at trial. ***Burden v. Burden***, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007), *perm. to app. denied*, (Tenn. Feb. 25, 2008). Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. *See **Altman v. Altman***, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005), *perm. to app. denied*, (Tenn. Oct. 31, 2005). Dissipation "typically refers to the use of funds after a marriage is irretrievably broken," ***Broadbent v. Broadbent***, 211 S.W.3d 216, 220 (Tenn. 2006), is made for a purpose unrelated to the marriage, and is often intended to "hide, deplete, or divert" marital property. ***Altman***, 181 S.W.3d at 681-82. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. ***Burden***, 250 S.W.3d at 919-20; 24 Am. Jur. 2d Divorce and Separation § 526 (2009). Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage. ***Burden***, 250 S.W.3d at 919-20.

428 S.W.3d at 81-82. Wife argues that Husband's expenditures on furnishings for his post-separation apartment, membership and subscription fees for online dating websites, a trip to Gatlinburg with a female friend, and Christmas gifts for his family, were frivolous and wasteful. These expenditures, however, were not unreasonably large or exorbitant in light of the circumstances. There is no indication that they were intended to hide, deplete, or divert marital property. The trial court did not err in finding no dissipation.

Using the trial court's calculations, Wife was to receive marital assets in the amount of $142,000 and Husband was to receive a net amount of $98,572. On appeal, Wife argues that the trial court incorrectly set the value of Husband's 401(k) retirement account at $131,226. We believe calculation errors were made.

Before the parties separated, Husband borrowed $40,000 from his 401(k) to pay off the mortgage on the marital residence and make home improvements. On the first day of trial, July 5, 2010, Husband testified that the asset value of his 401(k) account was $165,124.09, less the then-loan balance of $33,897.59, for a net value of $131,226.50. However, on the second day of trial, February 22, 2013, over seven months after the first day, Husband testified that the account value was $192,988.98 less the then-loan balance of $28,711.68, for a net value of $164,277.30. These numbers are undisputed.

Tenn. Code Ann. § 36-4-121(b)(1)(A) requires that marital property be "valued as of a date as near as reasonably possible to the final divorce hearing date." Husband's 401(k) account should have been valued at the net amount of $164,277.30 instead of the $131,226 figure utilized by the trial court. There is one other error in the trial court's calculations leading to the court's finding that Husband's share of the net marital assets is $98,572. In arriving at this figure, the trial court deducted $42,886[2] in debt from Husband's side of the ledger. That figure included the loan balance of the debt against Husband's 401(k); but that debt against the 401(k) had already been deducted from the gross value of Husband's 401(k) account. Thus, as can be seen, this indebtedness was subtracted *twice* from Husband's side of the ledger, significantly reducing the actual value of Husband's share of the net marital estate.

When these erros are corrected, we are left with the following calculations of Husband's share of the net marital estate:

| | |
|---|---|
| Net value of 401(k) account | $164,277.30 |
| Personal possessions | 1,060.00 |
| Life insurance policy | 14,172.00 |
| | $179,509.30 |
| Less: Debt to Wife | <5,000.00> |
| Miscellaneous debt | <8,988.41> |
| | $165,520.89 |

The trial court failed to award either party several marital assets – a savings account and a checking account in Wife's name; two joint accounts; and two savings accounts and one checking account in Husband's name. The total value of the accounts in Wife's name was $317.68. The value of the joint accounts was $25. The total value of the accounts in

---

[2]The trial court alluded to a total debt figure of $42,886 but the actual figure was $37,700.09 comprised of the $28,711.68 debt against the 401(k) and miscellaneous debt of $8,988.41.

Husband's name was $2,117.82. These amounts are basically undisputed,[3] as is their proper classification as marital property. Husband argues that he should be awarded $2,130.32 and Wife should be awarded $330.18. Wife argues that the money in all the accounts should be split evenly. We add $1,230.25 to each party's award.

Adjusting for the trial court's mathematical errors, its division of the marital estate results in $143,230.25 to Wife and $166,751.14 to Husband. Considering the statutory factors and the totality of the circumstances as outlined above, the evidence does not preponderate against this division of the net marital estate. Husband points out that between the time of separation and final judgment, he paid Wife approximately $73,571, including payments for her medical and legal expenses, repairs and expenses for the marital residence, car repairs, and alimony. Although there is no order for alimony pendente lite in the record, Husband paid Wife $400 per week from June 2010 until July 2011, and $369 per week thereafter until trial. Husband also asserts that the increase in value of his 401(k) account in the nearly eight months between the first and second days of trial obviously occurred long after the separation and did not result from any of Wife's efforts or actions. Although both parties made contributions to the marital estate over the marriage, Husband obviously contributed more. It is also apparent that Wife was responsible for the depreciation in the value of the marital residence. Husband testified, without contradiction, that he repeatedly asked Wife to keep the pets outside, and he built a fence in the backyard, but Wife let the dogs and cat urinate and defecate in the house, degrading its value. We affirm the trial court's division of marital property as modified herein.

B.

The trial court awarded Wife alimony in solido in the amount of $1,300 per month for five years. Wife argues that the court erred by not awarding her alimony in futuro for a larger amount. Our Supreme Court has provided the principles that guide our review of a trial court's alimony decision, stating as follows:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.

---

[3]Husband stated that the amount of money in the checking account in Wife's name was $21. Wife said that it was $25. This discrepancy is de minimus.

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

Regarding the statutory scheme governing alimony, the Supreme Court has recently observed:

Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1) (2010 & Supp.2012). Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony in solido, another form of long-term support, is typically awarded to adjust the distribution of the marital

estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. *Id.* at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce. *Id.*

Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Id.* at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.* Consequently, transitional alimony has been described as a form of short-term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life."

Transitional alimony is payable for a definite period of time and may be modified only if: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Gonsewski*, 350 S.W.3d at 109. . . . Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 115-16 (Tenn. 2012) (internal citation omitted; emphasis in original).

-12-

Tennessee courts making an alimony decision must consider the following statutory factors where relevant:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2014).

Much of what we have already said about the facts pertinent to the property division is also applicable to our alimony analysis. Regarding the two primary factors, Wife's need

and Husband's ability to pay, we note that Husband's income was approximately $130,000 per year[4] and Wife's was zero. Clearly Wife has substantial need and Husband has the ability to pay a significant amount with minimal economic hardship. Wife takes issue with the trial court's decision to impute income to her in the amount of $16,000 per year. However, this decision by the trial court was largely driven by a determination of the credibility of the various witnesses. Husband presented evidence suggesting that Wife would be able to do full-time light duty work, including the testimony of two expert witnesses, the neighbor across the street, the parties' son Joel, and himself. Wife presented conflicting evidence, primarily her own testimony. The evidence does not preponderate against these credibility determinations by the trial court.

The difference in the parties' relative earning capacities is large. The $16,000 per year imputed to Wife approximates the amount she would likely earn at a minimum wage job. There is scant evidence in the record suggesting that Wife has a greater earning capacity than that. She has only a high school education and very little work experience after staying at home for most of this 30-year marriage. In this regard, the long-term duration of the marriage is a significant factor. Wife also is limited by her physical and mental health problems, including chronic pain, depression, and anxiety issues. Her dependency on pain medication will make it harder for her to find employment. Wife was nearly 50 years old at the time of the divorce. The evidence fully supports the conclusion that Wife, the economically disadvantaged spouse, cannot achieve self-sufficiency, and that economic rehabilitation for her is not feasible. Even if she was able to acquire additional education or training, by the time she did, Wife would be nearing retirement age. If the in solido alimony award were to be upheld, in five years when alimony stops, Wife would likely be in serious financial trouble and subject to being a "ward" of the State. While Wife's efforts as a stay-at-home mother were less than stellar, nevertheless she was the primary caregiver for the children. When considered in toto, the evidence preponderates against the trial court's decision to limit alimony to five years. Because Wife has demonstrated a need for long-term spousal support, this is an appropriate case to change the trial court's award of alimony in solido into an award of alimony in futuro.

Wife's income and expense statement show expenses totaling $3,414 per month. However, the expenses included an estimate of $1,000 per month for "rent or mortgage" and Wife admitted on cross-examination that she was living rent-free in the unencumbered former marital residence. Wife has therefore demonstrated reasonable monthly expenses in

---

[4]Wife argues that the trial court should have set Husband's income at $138,445, the amount shown on his 2012 W-2 for wages earned. However, Husband testified that his income fluctuated from year to year because it was based on contract work, and the trial court took a rough average of Husband's income over the last four years to arrive at the $130,000 figure. The evidence does not preponderate against this finding.

the amount of $2,414. Her imputed monthly income of $1,333 leaves a deficit of $1,081 per month. We hold an award of $1,000 per month of alimony in futuro, payable until Wife's death or remarriage, is appropriate under the circumstances presented here.

Lastly, Wife contends that the trial court erred in denying her request for attorney's fees at trial, and asks for an award of attorney's fees on appeal. In ***Gonsewski***, the High Court stated:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. *See* Tenn.Code Ann. § 36-5-121(h)(1) ("alimony in solido may include attorney fees, where appropriate"); ***Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorney's fees is within the sound discretion of the trial court. ***Crabtree***, 16 S.W.3d at 361; ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see* ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see* ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See* ***id.*** at 185.

350 S.W.3d at 113.

In the present case, Wife has demonstrated that she lacks sufficient funds to pay counsel, and would be required to deplete her relatively meager resources to pay attorney's fees. The marital assets awarded to her are illiquid. Her earning capacity is relatively small. As noted, Husband is financially able to pay. We hold this is an appropriate case for an award of reasonable attorney's fees, at trial and on appeal, as alimony in solido. On remand,

the trial court will  determine the amount of a reasonable attorney's fee to be awarded to Wife, less any payments made by Husband during the pendency of this case that can be traced to legal fees claimed by Wife.

V.

The judgment of the trial court is affirmed as modified.  The case is remanded to the trial court for a determination of a reasonable attorney's fee to be awarded to Wife.  Costs on appeal are assessed half to Romelio R. Ruiz and half to Sheila Lea Ruiz.


_____
CHARLES D. SUSANO, JR., CHIEF JUDGE