IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 3, 2017

## EDWARD KEITH MORELOCK v. RUTH ELLEN MICK MORELOCK

**Appeal from the Circuit Court for Washington County**
No. 31836     John C. Rambo, Chancellor[1]

_____

**No. E2016-00543-COA-R3-CV**

_____

In this divorce case, Edward Keith Morelock (Husband) appeals the trial court's decisions regarding (1) co-parenting time with the parties' child; (2) division of marital property, (3) valuation of one of the marital assets, and (4) refusal of the court to award him spousal support. Husband argues that the trial court should have designated him primary residential parent and granted him more residential time with the child. He also asserts that the trial court overvalued the business owned by the parties, and that the court should have equally divided the assets and liabilities of that business rather than awarding and assigning all of them to him. Finally, he argues that the trial court should have ordered Ruth Ellen Mick Morelock (Wife) to pay him alimony. Finding no abuse of discretion, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Michael D. Kellum, Johnson City, Tennessee, for the appellant, Edward Keith Morelock.

Regina L. Shepherd, Elizabethton, Tennessee, for the appellee, Ruth Ellen Mick Morelock.

_____

[1]Sitting by interchange.

## OPINION

## I.

The parties were married on December 21, 1991. Two children were born to their union, a daughter who had turned eighteen before trial, and a son who was sixteen at the time of trial. Husband filed for divorce on June 25, 2013. Wife, who was 48 at the time of trial, had worked as a nurse for her entire career and was then working in a managerial nursing position. Husband, who was then 54, operated the business owned by the parties, Professional Printing Services, LLC, doing business as Sir Speedy under a franchise agreement. The parties owned the business as a partnership, with Husband holding 51% of the interest, and Wife 49%.

The trial took place on August 31, November 2, and November 13, 2015. The trial court entered its judgment on February 18, 2016, in a comprehensive 41-page order making numerous findings of fact and thoroughly addressing each of the issues presented. The trial court awarded Wife the designation of primary residential parent, with 237 days per year of residential time with the child. Husband was granted 128 days. Virtually all of the parties' property was classified as marital; however, the trial court awarded Husband a few items of personal separate property valued at a total of $197. The trial court valued the Sir Speedy business at $150,000 and awarded it entirely to Husband. The court also ruled that, as between the parties, Husband would be responsible for Sir Speedy's business debts. The marital residence and associated mortgage debt were awarded to Wife. Regarding the total distribution of the marital estate, the trial court found as follows:

> With the Sir Speedy business, and deducting the debts Husband is assigned, his net (after debts) equitable property interest is approximately $361,000 in marital assets. This is substantially more than the approximately $265,000 that Wife is receiving.

Husband timely filed a notice of appeal.

## II.

Husband raises the following issues, as quoted verbatim from his brief:

> 1. Whether the trial court erred in determining a custody arrangement that is in the best interest of the minor child.

2

2. Whether the trial court erred in determining the parties' valuation of the marital property.

3. Whether the trial court erred in an equitable division of the marital property and division of the marital debt.

4. Whether the trial court erred in determining alimony should not be awarded to the husband.

## III.

### A.

Husband argues that the trial court erred when it did not designate him the primary residential parent and in refusing to award him more residential parenting time. The Supreme Court has stated that "[d]etermining the details of parenting plans is peculiarly within the broad discretion of the trial judge" and thus, "[a] trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014), quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (internal quotation marks omitted.) We have reviewed the evidence in the record and the trial court's extensive findings of fact in light of the applicable statutory factors, Tenn. Code Ann. § 36-6-106 (2014), and find no abuse of discretion in the trial court's decision regarding child custody.

Furthermore, because the child turned eighteen years old on July 28, 2017, the issue of custody is now moot. On several occasions, this Court has held moot the issue of custody of a child who reached the age of majority while the appeal was still pending. *See, e.g., In re Antar R.W.*, No. W2011-01244-COA-R3-JV, 2012 WL 3055989, at *3 (Tenn. Ct. App., filed July 27, 2012) (stating, "[s]on has already reached the age of eighteen, so the proceedings as to custody are now moot."); *Moore v. Moore*, No. 01A01-9103-CH-00113, 1991 WL 220582, at *2 (Tenn. Ct. App., filed Nov. 1, 1991) ("as to the oldest child, now in excess of 18 years of age, the [custody] question is moot"); *Briley v. Briley*, 1988 WL 31774, at *3 (Tenn. Ct. App., filed Apr. 4, 1988); *Robinson v. Irons*, No. E2010-00249-COA-R3-CV, 2010 WL 3928625, at *6 n.4 (Tenn. Ct. App., filed Oct. 7, 2010). Although there can be circumstances under which it is appropriate for an appellate court to decline to apply the mootness doctrine, *see Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 204 (Tenn. 2009), *Moncier v. Harris*, No. E2016-00209-COA-R3-CV, 2017 WL 946350, at *5 (Tenn. Ct. App., filed Mar. 10, 2017), we do not find any such circumstances in this case.

Regarding the timeline of pertinent events following the trial court's divorce judgment, we note that, after Husband filed a notice of appeal on March 17, 2016, he filed a motion on April 11, 2016, asking this Court to hold the appeal in abeyance, which motion we granted on April 12, 2016. Subsequently, on December 22, 2016, Husband filed a motion for an extension of time within which to file his appellate brief, which this Court also granted. Therefore, to the extent it might be suggested that there was an undue delay in the appellate process, any such delay is largely due to Husband's actions.

**B.**

Husband's issues regarding the valuation and distribution of the marital estate center upon one asset – the Sir Speedy printing business that the parties own and which Husband operates in Johnson City. As this Court has recently reiterated,

> After the trial court has classified the divorcing parties' property as either marital or separate, it must assign a value to each piece of property subject to division. ***Owens*** [***v. Owens***], 241 S.W.3d [478,] at 486 [Tenn. Ct. App. 2007]. Each party bears the burden of presenting competent valuation evidence. ***Kinard v. Kinard***, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). If the valuation evidence presented by the parties is conflicting, the court may assign a value that is within the range of values represented by all of the relevant valuation evidence. ***Id***. Decisions regarding the classification and value of the parties' property are questions of fact, and they will not be second-guessed on appeal unless they are not supported by a preponderance of the evidence. ***Owens***, 241 S.W.3d at 485–86.

***Watts v. Watts***, No. W2016-01189-COA-R3-CV, 2017 WL 2954685, at *6 (Tenn. Ct. App., filed July 11, 2017).

The parties started the Sir Speedy business in the mid-1990s. They signed a franchise agreement with Sir Speedy, Inc. in late 1996. At the outset of the business, the parties agreed that Husband would own 51% of the partnership and Wife 49%. The trial court found that "Husband operated, controlled, and managed all aspects of the business." The evidence in the record fully supports this finding. Husband ran the Sir Speedy business; the proof establishes that he did not keep Wife informed about the details of its operation. During the marriage, Wife pursued her nursing career.

4

The trial court stated that "[t]he parties presented limited evidence as to the value of the business, which the Court took under advisement." As the trial court further noted, neither party presented an expert witness to provide valuation testimony. The court found the following as to the valuation of the Sir Speedy business:

> The only testimony related to earnings was testimony that some years there was no taxable income from their accountant, and [Husband's] testimony that he expects the company to earn income of approximately $30,000 in 2015. Further, he testified the company had the immediate potential to earn $35,000 to $40,000. Therefore, the Court concludes the business will earn future annual earnings, and it appears that income should increase in the future, as [Husband's] testimony indicates income has increased each of the last two to three years. Thus, there is some value to the business because it does generate earnings. Further, the company has been in business for nearly two decades, which is an indication of its on-going viability. The business earnings are sufficient to maintain the businesses' debts and provide Mr. Morelock with income.

> \* \* \*

> According to the asset summary, the cost, or basis, of the assets was $326,524.97 as of December 31, 2012. Total depreciation as of that date was $273,892.94. This Court rejects that the value of the assets, minus the total depreciation, is an accurate reflection of the actual current value of the company's assets, and it certainly does not reflect that Sir Speedy exists to develop and appreciate assets, but rather, to generate earnings. Accordingly, the Court takes into account a less aggressive depreciation in arriving at a valuation of the business under the asset value method. The parties diverge considerably in their valuation of the business with [Husband] asserting the business has no value but has some assets, and [Wife] asserting the business has an asset value in excess of $200,000. Therefore, this Court values the business at $150,000 as it retains considerable assets and it produces income. This value is also consistent with an evaluation by earning methods – given the limited information supplied to the Court.

5

The parties agreed that the real property owned by Sir Speedy was valued at $282,000 and encumbered with a mortgage of $245,265, resulting in an equity of $36,735. Wife testified that the total value of Sir Speedy's personal property and equipment was $219,284.83. She said she arrived at that figure "from [Husband's] documents that he provided to us with the property value." Husband listed the value of the personal property and equipment at $89,140.

Husband testified that he expected Sir Speedy to turn a profit of around $30,000 for 2015, the year of trial. He said that beginning around 2008, the Great Recession had caused hardship for all of the printing businesses in the area. By the time of trial, there were only two other nearby competitors that had survived the economic downturn, compared with thirteen that had been located within a five-mile radius when the parties opened Sir Speedy. Husband testified that the reduction in competition resulted in an increase in his business. Wife produced a client list from documents that Husband had provided to her, which showed a total of 300 Sir Speedy clients. Husband testified that Sir Speedy does "probably eighty to ninety percent" of the printing for East Tennessee State University. In short, the evidence preponderates in favor of the trial court's finding, generally stated, that Husband's printing business was well-positioned for profitability at the time of trial. In accord with the well-established general principle that "a trial court's decision with regard to the value of a marital asset will be given great weight on appeal[,]" *Grant v. Grant*, No. M2014-01835-COA-R3–CV, 2016 WL 2898434, at *5 (Tenn. Ct. App., filed May 12, 2016), we affirm the trial court's decision finding the value of the Sir Speedy business to be $150,000.

The trial court stated that "[t]he $150,000 value assigned to the business represents a value that is significantly discounted because the business carries and services debts[.]" Husband, in his suggestion of equitable outcome filed with the trial court, listed seven outstanding debts, totaling $237,940.62, owed by Sir Speedy to various financial institutions, not including the mortgage on the real property. Additionally, in June of 2015, the parties were sued for $156,157 by Sir Speedy, Inc., for failure to pay royalties and other fees owed under the franchising agreement. Husband admitted failing to pay the franchise fees owed to Sir Speedy, Inc. He stated that he had been in negotiations with corporate representatives for several years before the divorce action. The franchise fee dispute went to arbitration on August 16, 2013. The record contains a copy of an arbitration award in Sir Speedy, Inc.'s favor in the amount of $141,801. Wife testified that Husband did not tell her until December of 2013 of his failure to pay Sir Speedy, Inc., the resulting debt, or the arbitration. Husband admitted to the following in his testimony, stating as follows:

> I was a 51% owner of the business. I could make any of the
> decisions that I needed to without her permission.

\*     \*     \*

A. As I stated earlier, I'm the 51 percent owner of Sir Speedy and as that in our articles of corporation I am the managing, general manager of Sir Speedy and I have no obligation to notify the minority owners of anything about Sir Speedy.

\*     \*     \*

A. Since I am the general partner, managing partner, the majority owner of Sir Speedy, I am not required to give [Wife] any information, therefore I probably did not ever give her this information.

As can be seen, the evidence does not preponderate against the trial court's finding that Husband "intentionally withheld information from [Wife] concerning the Sir Speedy franchise fee dispute and arbitration," which the court found "is representative of his controlling nature regarding the business."

Husband argues that the trial court should have awarded him 51% of the business assets, and assigned him the same percentage of its debts, instead of awarding him the entire interest in the business and responsibility for all of the debts. In making an equitable division of property, the trial court must consider the following statutory factors:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a

7

party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (Supp. 2016). In allocating marital debt, a trial court should consider "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003), citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989).

The trial court, referencing and applying these factors, held as follows:

The Court finds the debts associated with Sir Speedy were primarily under the control of [Husband], and that Sir Speedy is able to pay the debts of the business and pay income to [Husband]. . . . Husband has sought to control resolution of the company's debts in the past, and contends that he is

8

confident he can negotiate for lower payments. Husband has controlled the business and its accumulation of debt throughout the life of the business. In fact, Husband accumulated more debt in the business's name with the purchase of a late-model luxury vehicle during the pendency of this trial. For these reasons, the Court believes the husband should continue to control the business and its future course of accumulating or reducing debt. The Court finds the business's value will increase if Husband negotiates a reduction in the Sir Speedy franchise debt, and the Court believes him when he asserts he has the ability to reduce this debt to $50,000 or less.

Wife was not responsible for incurring any of the business debts. In fact, she was not even made aware of some of them. As already noted, Husband was in full control of running the business. We have observed on several occasions that "[m]arital debts should, where possible, follow their associated assets." *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), citing *Mondelli*, 780 S.W.2d at 773; *Carpenter v. Carpenter*, No. W2007-00992-COA-R3-CV, 2008 WL 5424082, at *9 (Tenn. Ct. App., filed Dec. 31, 2008); *Radebaugh v. Radebaugh*, No. M2005-02727-COA-R3-CV, 2006 WL 3044155, at *14 (Tenn. Ct. App., filed Oct. 26, 2006) ("Where possible, marital debts frequently follow their related assets"); *Lewis v. Lewis*, No. E2002-00209-COA-R3-CV, 2002 WL 31757490, at *6 (Tenn. Ct. App., filed Dec. 10, 2002). The trial court followed this general principle in this case. Bearing in mind the trial court's "broad discretion," *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013), and "wide latitude in fashioning an equitable division of property," *Rountree v. Rountree*, 369 S.W.3d 122, 133 (Tenn. Ct. App. 2012) (internal quotation marks omitted), we find no abuse of discretion with the trial court's division of marital property in the instant case.

## C.

Husband argues that the trial court erred in declining his request for spousal support. Our standard of review of the trial court's spousal support decision is as stated by the Supreme Court:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine

9

whether spousal support is needed and, if so, the nature, amount, and duration of the award.

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

10

A trial court's award of spousal support is governed by Tenn. Code Ann. § 36-5-121(i) (2014), which provides:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and intangible;
>
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
>
> (9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The trial court made specific findings of fact relative to each of the above pertinent statutory factors. As already stated, Wife was 48 years old, and Husband 54, at time of trial. The parties had been married for 23 years. Both are well-educated; Husband holds bachelor's degrees in business management and accounting, and Wife has professional degrees in nursing. Husband also holds Tennessee licenses to sell life or disability insurance, and as an investment counselor. Wife is in generally good health. Husband has health problems "including connective tissue disorder, fibromyalgia, neuropathy, osteoporosis, low testosterone, [and] low vitamin D," according to his testimony. The trial court recognized these medical problems, but found that they did not preclude him from continuing to work. Husband stated that he was physically able to continue operating Sir Speedy – he worked 40 to 45 hours in the week before trial – but that he would not be able to work elsewhere.

Wife's gross income at time of trial was about $6,179 per month. Her take-home pay was roughly $4,268 according to her proffered paycheck stub. Husband's earning capacity as owner and manager of Sir Speedy has already been thoroughly discussed in Section III(B) above. The record supports the trial court's conclusion that he has an earning capacity of at least $30,000 per year. At the time of trial, Husband was living rent-free in a trailer on land owned by his parents. After considering the pertinent statutory factors, the trial court held and reasoned as follows:

> Applying all of the relevant factors, the Court declines to grant Husband an award of support. He has no need for rehabilitation. He has the education and skills he needs. He has a job with the business he now owns and controls. There is no need for transitional alimony to allow him to increase his income. He has no need of assistance to adjust to the economic consequences of a divorce. His post-divorce assets

12

include a business he can operate that will generate an income that is sufficient to meet his preferred lifestyle. He has sufficient money from the division of marital assets to allow him to pay his bills if he is unable to receive a draw or income from his business due to seasonal profitability. He has sufficient assets to be self-sufficient now. It is noteworthy that his business appears to be paying his automobile expenses, which also indicates the business is financially stable. Finally, the Court reviewed the parties['] Local Rule 9 Statement of Income and Expenses. Considering them in light of the parties' testimony at trial, . . . Wife does not have the ability to pay Husband support, and he does not have the need.

We hold that the trial court did not abuse its discretion in refusing to order Wife to pay Husband spousal support.

Wife asks for an award of her attorney's fees on appeal. As did the trial court regarding her similar request at the trial level, we find that she has sufficient assets to be responsible for paying her own legal expenses.

**IV.**

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Edward Keith Morelock. The case is remanded for enforcement of the trial court's judgment and collection of costs below.

_____
CHARLES D. SUSANO, JR., JUDGE

13