IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 15, 2020 Session

## THOMAS ROBERT BLAKEMORE v. LYNN ANN BLAKEMORE

Appeal from the Chancery Court for Henry County
No. 23343     Carma Dennis McGee, Chancellor

———————————————————

### No. W2018-01391-COA-R3-CV

———————————————————

This divorce action concerns the trial court's division of the marital estate, calculation of child support, and its denial of alimony and attorney fees.  We affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated in part, Affirmed in part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and ARNOLD B. GOLDIN, J., joined.

Shon D. Johnson, Paris, Tennessee, for the appellant, Lynn Ann Blakemore.

W. Brown Hawley, II, Paris, Tennessee, for the appellee, Thomas Robert Blakemore.

## OPINION

### I.     BACKGROUND

Thomas Robert Blakemore ("Husband") and Lynn Ann Blakemore ("Wife") married in September 2002.  This was Husband's second marriage and Wife's first.  One child ("the Child") was born of the marriage.  The parties separated in August 2015 when Wife threatened Husband and the Child with a 10-inch butcher knife.  Wife was arrested, but Husband dismissed the complaint to allow for reconciliation.  The parties attempted reconciliation until Husband filed this action on April 28, 2016, alleging grounds for a divorce and requesting designation as the primary residential parent of the Child.

The parties attended mediation and agreed to sell the marital residence. They were unable to come to terms on the remaining issues pertinent to their divorce proceeding. Husband later refused to sell the residence when the purported buyers requested a second extension of the closing date. Husband then sought to remain in the residence with the Child over Wife's objection.

The case proceeded to a hearing in January 2018, in which the parties detailed the demise of the marriage and the contentious nature of their relationship and its effect on the Child. Husband recounted a plethora of degrading and threatening comments made by Wife to the Child and himself. Wife offered an explanation for the same and described the relationship as having good years and bad years. She claimed that the parties often fought about money and his adult children. She explained that he agreed to her staying home with the Child but that he later expected her to work.

Relative to income and future earning potential, Wife, who was 52 years old at the time of the hearing, attained a Bachelor's of Arts degree in Social Work and a Master's Degree in Social Work. She has served in various positions in the medical field since 1987 and was a nursing home administrator from 1996 through 2009, earning from $80,000 to $100,000 per year. She worked part-time from 2009 through May 2013, when the parties moved to Tennessee to facilitate her being a stay-at-home mother. She worked sporadically following the move.

Wife has not worked since May 2017, as a result of various medical ailments, including Type I and Type II Diabetes, neuropathy, lumbar and cervical problems, bulging discs, vertigo, osteoarthritis, and chronic pain. She has applied for disability benefits. At the time of the hearing, she was receiving $350 in food stamps, $142 from Families First, and additional assistance in the amount of $452 per month. She has no other income. She listed expenses of $5,827.08 per month, not including future medical costs once she no longer has health insurance through Husband.

Husband, who was 61 years old at the time of the hearing, is a retired firefighter and Emergency Medical Technician ("EMT"). He is a high school graduate and has also attained some medical training, including completion of his EMT course. He has some prior work experience as a home inspector, but, like Wife, he too suffers from medical ailments, including minor back and hip problems. He relies upon his pension, which provides a gross income of $5,449 per month. He listed expenses of $7,030.89 per month, including $1,800 in credit card payments. He was set to receive a 3 percent cost of living adjustment, beginning January 2018. He also became eligible for Social Security benefits on June 1, 2018, but was uncertain whether he would begin drawing from those benefits at that time.

Relative to marital property, Wife contributed $65,000 from her 401k to the purchase of the marital home in 2011. The home was jointly titled. Husband contributed

$60,000 he received as a family inheritance to the payment of marital expenses. The parties likewise purchased various items of valuable property throughout the marriage.

Following the hearing, the trial court granted Husband a divorce on the grounds of inappropriate marital conduct, divided the marital estate, denied Wife's request for transitional alimony due to Husband's inability to pay, designated Husband as the primary residential parent of the Child, awarded Wife co-parenting time, calculated her child support obligation, and denied the competing requests for attorney fees. This appeal followed the court's resolution of the parties' post-trial motions, in which the court, inter alia, reduced its calculation of Husband's gross monthly income in consideration of Wife's receipt of a portion of his monthly pension payment.

## II.    ISSUES

(A)    Whether the court erred in its valuation and division of the marital estate.

(B)    Whether the court erred in its calculation of child support.

(C)    Whether the court erred in its denial of transitional alimony.

(D)    Whether the court erred in its denial of attorney fees.

(E)    Whether Wife is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

This case was tried by the court without a jury. The review of the trial court's findings of fact is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Our review of a trial court's conclusions of law is de novo upon the record with no presumption of correctness. *Tyron v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).

## IV.    ANALYSIS

### A.

Wife raises a number of issues concerning the court's division of the marital estate. The trial court has broad discretion in fashioning an equitable distribution of

marital property, and an appellate court will defer to a trial court's distribution unless it is inconsistent with the statutory factors or is not supported by a preponderance of the evidence. *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013).

In all divorce cases, after classifying the parties' property, the trial court is directed to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1); *Davidson v Davidson*, No. M2003-01839-COA-R3-CV, 2005 WL 2860270, at *2 (Tenn. Ct. App. Oct. 31, 2005); *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). Decisions regarding the value of marital property are questions of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). Accordingly, they are entitled to great weight on appeal and will not be second-guessed unless they are not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002); *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995). In making an equitable division of marital property, the trial court is guided by the following relevant factors:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c). The factors are not listed in order of importance, and each is to be considered in relation to the specific facts of each case. *See Powell v. Powell*, 124 S.W.3d 100, 108 n.8 (Tenn. Ct. App. 2003).

Here, the court's property division resulted in Wife receiving total net assets valued at $34,227.74 and Husband receiving net assets valued at $88,633.21. These values were determined following the court's allocation of marital debt. As an element of the property division, the court directed Husband to pay Wife $27,202.73 within 90 days from the entry of the order using funds obtained from the refinancing of the marital residence. This payment results in a 50/50 split of marital property.

Wife first suggests that the court should have returned her investment into the marital property and awarded her one-half of the equity that accrued from the residence during the marriage. We disagree. Husband also contributed to the marriage by way of an inheritance in almost the same amount of Wife's investment into the marital residence.

Husband agrees with the court's valuation and division of the marital property, with the exception of the Kubota mower. He asserts that the court erroneously set a value of $6,000 when he presented evidence establishing a value of $364. The record supports the court's valuation.

Wife next claims that the court failed to identify and allocate four credit card debts, totaling approximately $54,000 in marital debt. Marital debt is subject to equitable division in the same manner as marital assets. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). In *Alford*, the Supreme Court defined marital debt consistent with the definition of marital property, which is defined by statute as "'all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing a complaint for divorce.'" *Id.* at 813 (quoting Tenn. Code Ann. § 36-4-121(b)(1)(A)).

The four disputed debts were listed by the trial court as follows:

| Card | Husband's Value | Wife's Value | Court's Value | Assigned |
|---|---|---|---|---|
| Chase SW Card | $20,895.61 | $32,000 | $20,895.61 | Husband |
| Citi Card | $10,146.50 | $4,517.03 | $10,146.50 | Husband |
| Citi Simplicity | $3,000 | $2,900 | $3,000 | Husband |
| Discover | $5,585.40 | $15,000 | $5,585.40 | Husband |

The court did not identify these debts by account number. The record reflects that the parties maintained separate accounts with several credit card companies. In allocating the debt, the court failed to recognize that there were separate accounts with these companies and ruled as if each party had submitted its own approximate value as evidenced in the above table. The court then accepted Husband's value and saddled him with the corresponding debt without consideration of the other account. By way of example, Wife listed a debt of $31,440 for a Chase account ending in -6227, while Husband listed a debt of $20,891 for a Chase account ending in -9551. The court failed to recognize that these were two separate accounts. Instead, the court assigned the debt of $20,891 from the account ending in -9551 to Husband but did not allocate the debt of $31,440 from the account ending in -6227. This was error.

Husband first responds that these were Wife's separate debts, incurred after the separation. The court did not so find. Further, debts incurred by either or both spouses during the course of a marriage are properly classified as marital. *Alford*, 120 S.W.3d at 811. They include debts incurred up to the date of the final divorce hearing. *Id.* at 813.

Husband next maintains that any error in the court's failure to assign these debts was harmless. He notes that assigning the unallocated debt of $54,000 to him would decrease his total net assets to $34,000 and obviate the need for his payment of $27,000 to equalize the division. He asks this court to simply leave the division as originally found by the trial court and allow his $27,000 payment to cure the error. We disagree. The trial court's erroneous property division affects other aspects of this divorce proceeding, namely our consideration of the trial court's decision to deny Wife's request for attorney fees as alimony in solido. Accordingly, we vacate the court's allocation of marital debt and remand for reconsideration.

Wife next claims that the court improperly classified a Citi Diamond credit card debt of $10,146 as marital debt. She explains that Husband did not claim such a debt or submit any account statement for the court's consideration. Husband agrees that his card was not a Citi Diamond card as listed by the trial court but maintains that he submitted a debt of approximately $10,000 on a Citi Card as marital debt. The record reflects that the court properly allocated this debt to Husband and that this was a mistake in name only that did not affect the ultimate property division. However, given the confusion in the court's assignment of debts, we direct the court to correct the error upon remand.

Wife next asserts that the court initially made an equitable division of Husband's pension by awarding her 7/30th of the benefit but that it then erroneously reduced the award and assigned an actual dollar value. She states that the amount awarded should be reflected as a percentage or fraction to avoid her loss of the vested annual increases. Husband responds that the court's award and calculation of his pension income was supported by the evidence. In dividing the pension, the court initially stated as follows:

No evidence of a cash value of said pension was presented. Therefore, the Court has assumed for the purposes of property division that the pension has no lump sum cash value to be divided, but must be paid in monthly installments guaranteed for the life of the beneficiary. Husband shall retain 23/30 of said pension payment and Wife shall be entitled to 7/30 of said pension payment.

In the post-trial proceedings, the court then amended its ruling to reflect that Wife should receive 1/2 of the 7/30 marital portion of the pension, with an estimated dollar amount of $617.27 per month.

"'Marital property" includes the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefit rights accrued as a result of employment during the marriage[.]"' Tenn. Code Ann. § 36-4-121(b)(1)(B)(i). We agree with the court's amendment insofar as it reflected her receipt of 1/2 of the 7/30 marital portion of the pension; however, we hold that the award should be maintained as a percentage to ensure Wife's receipt of the full value of the award without need to return to the court for continued amendments.

B.

Wife raises a number of issues concerning the court's calculation of child support and her support arrearage. The setting of child support is a discretionary matter we review using the deferential "abuse of discretion" standard of review, which requires the court "to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A).

First, Wife claims that the court erred in calculating Husband's gross income. According to the child support worksheet, the court calculated Husband's gross monthly income as $5,290, which was his gross monthly income for 2016, despite documentation in the record providing that Husband's income for 2017 was $5,449, a difference of $159. This was error.

Wife next takes issue with the court's calculation of her gross monthly income. First, she explains that she provided the court with her income information, reflecting a total gross monthly income of $944 but that the court imputed an income of $1,256.67, an

- 7 -

amount commensurate with minimum wage. She argues that the court's imputation of income was error, absent a finding of voluntary underemployment. The Guidelines provide that a court may impute income in one of the following three situations:

> (1) If a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed; or
> (2) When there is no reliable evidence of income; or
> (3) When the parent owns substantial non-income producing assets, the court may impute income based upon a reasonable rate of return upon the assets.

Tenn. Comp. R. & Regs. 1240-02-04-.04. The court did not rely upon any of the aforementioned situations in imputing an income of minimum wage. However, in denying Wife's request for alimony, the court found that she presented no evidence of an inability to be gainfully employed and that she had an extensive education which lends itself to sedentary labor and does not demand the stamina required to perform physical labor. Husband claims that the court committed error by failing to find that Wife was voluntarily underemployed in consideration of her education, employment history, and failure to establish her inability to work. We agree and direct the court to impute an income commensurate with her education and employment history.

Wife next takes issue with the court's modification of her gross monthly income to reflect her receipt of Husband's pension income. Tennessee Code Annotated section 36-5-101(a)(9) provides as follows:

> Where . . . pension benefits . . . or any other tax qualified account has been considered by the trial court, and determined to be marital property to be divided, the distributions of such lump sum amounts necessary to complete the division of property, whether distributed in a single payment or by periodic payments, shall not be considered income for the purpose of determining a spouse or ex-spouse's right to receive alimony or child support, but the income generated by the investment of such lump sum awards shall be considered income for such purpose.

The consideration of pension income in determining Wife's support obligation was error.

Lastly, Wife claims that the court erred in its calculation of her co-parenting time in setting the amount of her child support arrearage. The court found as follows:

> Child support shall be awarded retroactive to May 1, 2016, to be calculated with the day counts listed on Exhibit 18 for the respective time periods. [Wife's] income will be imputed at minimum wage for said retroactive

- 8 -

support and [Husband's] income will be $5,290.90 per month. [Wife] will pay said arrearage at a rate of $50.00 per month until paid in full.

Husband agrees that the court committed error in its calculation of the support arrearage by failing to calculate the arrearage from the date of separation and by failing to consider Wife's actual income during that time in setting her obligation. The Guidelines provide that the amount of retroactive child support should be calculated from the date of one of the following:

1.     Of separation of the parties in a divorce or in an annulment; or
2.     Of abandonment of the child and the remaining spouse by the other parent in such cases; or
3.     Of physical custody of the child by a parent or non-parent caretaker.

Tenn. Comp. R. & Regs. 1240-02-04-.06(1)(b). Here, the parties separated on August 31, 2015, at which time Husband also retained exclusive physical custody of the Child pursuant to a court order. The Child remained with Husband even after the order expired on November 15. Accordingly, we hold that the support arrearage should be calculated from August 31, 2015, the date of the separation and the date on which Husband received exclusive physical custody of the Child. We direct the parties to submit new day counts, beginning August 31, 2015, for the court's calculation of the support arrearage.

In consideration of the foregoing, we vacate the court's decision as it pertains to its calculation of the parties' support obligations and its calculation of the support arrearage. We remand for recalculation of the same.


C.


Wife argues that she established her need for alimony and Husband's ability to pay as evidenced by his payments of large sums each month on his credit card, his cost of living increase in January 2018, and his future receipt of Social Security benefits. Husband responds that the court's denial of alimony was appropriate given Wife's fault in the divorce and her failure to establish her claimed disability and inability to work.

Trial courts have broad discretion to determine spousal support if needed and, if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006).

Transitional alimony is defined as "a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce." Tenn. Code Ann. § 36-5-121(g)(1). In determining whether to award support, the Tennessee Code provides for the weighing of certain factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be the custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and obligor spouse's ability to pay." *Mayfield v. Mayfield*, 395 S.W.3d 108, 116 (Tenn. 2012).

In denying Wife's request for transitional alimony, the court reasoned as follows:

In reviewing the statutory factors for alimony set forth above, the Court finds that this is a somewhat lengthy marriage. The parties have both retired. Wife claims that she is disabled, although she has presented no evidence of an inability to be gainfully employed. She has an extensive education which lends itself to sedentary labor and does not demand the stamina required to perform physical labor. Wife has expressed no intent or desire to further her education or obtain new employment training, which is understandable considering her extensive education and work experience. Husband has only periodic fixed payments, in addition to the potential for social security payments. The parties enjoyed a comfortable standard of living while together. Husband currently enjoys much the same standard, but there is no proof that Wife cannot improve her current standard of living. Husband has been assigned the vast majority of the marital debt, as reflected on the attached spreadsheets. Further, wife has been found to be at fault in the demise of the marriage.

The Court has set forth the law with reference to Wife's alimony claim. The Court has also set out what it considers to be the facts which impact upon the Court's ruling on this request. After consideration of the facts set forth above and the factors set forth in the statute, which includes a consideration of the distribution of the marital estate, and considering specifically Wife's need and Husband's ability to pay, the Court finds that Wife has a need for transitional alimony. Wife is temporarily economically disadvantaged due to the divorce, and has been detrimentally affected by the breakdown of the marriage. However, Husband does not have the ability to pay spousal support. In making this determination, the Court has specifically considered the age of the parties and their future earning potential, and the liability for the marital debt. Therefore, the Court denies Wife's request for alimony.

While the court considered Husband's *future* earning potential in denying Wife's request, the record reflects that Husband's income information used by the trial court was inaccurate at the time of the hearing. The court calculated Husband's gross monthly income as $5,290, which was his gross monthly income for 2016, despite documentation in the record providing that Husband's income for 2017 was $5,449, a difference of $159. Further, the court imputed an income of minimum wage for Wife when her education and employment history merited a higher income. With these considerations in mind, we vacate the court's denial of transitional alimony and remand for consideration of the same with accurate information.

- 11 -

D. & E.

Wife argues that she established her need for attorney fees at trial as evidenced by her extensive medical issues and limited ability to work and that she also established Husband's ability to pay as evidenced by his payment of large sums each month on his credit card.

The decision to award (or deny) attorney fees as alimony in solido is within the sound discretion of the trial court. *Crabtree*, 16 S.W.3d at 361; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). The appellate court will not interfere with an award, except upon a showing of an abuse of discretion, where the evidence preponderates against the award. *Long v. Long*, 957 S.W.2d 825 (Tenn. Ct. App. 1997); *Elliot v. Elliot*, 825 S.W.2d 87, 92 (Tenn. Ct. App. 1991); *Butler v. Butler*, 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984).

An award of attorney fees in divorce cases is considered spousal support, generally characterized as alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). An award of such fees is subject to the same factors that must be considered in the award of any other type of alimony. *Gonsewski*, 350 S.W.3d at 113; *Yount*, 91 S.W.3d at 783. Therefore, the statutory factors listed in Tennessee Code Annotated section 36-5-101(d)(1) are to be considered in a determination of whether to award attorney fees. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002).

An award of attorney fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith." *Langschmidt*, 81 S.W.3d at 751 (quoting *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983)). The award of attorney fees as additional alimony is most appropriate where the divorce does not provide the obligee spouse with a source of funds, such as from property division, with which to pay his or her attorney fees. *Yount*, 91 S.W.3d at 783. Having found reversible error in the court's property division, we vacate the denial of attorney fees as alimony in solido and remand for reconsideration of this issue.

For the same reasons that Wife seeks attorney fees at the trial level, she also seeks attorney fees incurred at the appellate level. As we have stated:

[I]t is in the sole discretion of this court whether to award [attorney] fees on appeal. As such, when this court considers whether to award [attorney] fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

- 12 -

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted). Exercising our discretion in such matters, we respectfully deny the request for attorney fees on appeal.


## V.     CONCLUSION

We vacate the court's decision as it pertains to the debt division, pension payment, child support issues, and the alimony determinations. We remand for proceedings consistent with this opinion. We affirm the judgment in all other respects. Costs of the appeal are taxed equally to the parties, Thomas Robert Blakemore and Lynn Ann Blakemore.

_____
JOHN W. MCCLARTY, JUDGE